17425

A. H. TURBEVILLE, doing business as Mullins Builders Supply, Respondent, v. Mary J. GORDON *et al.,* of whom Mary J. Gordon is Appellant

(103 S. E. (2d) 521)

*Elliott D. Turnage,* Esq., of Darlington, *for Appellant,*

*Messrs. Charles T. Speth* and *Woods & Woods,* of Marion, *for Respondent,*

May 14, 1958.

OXNER, Justice.

This is an appeal by Mary J. Gordon from an order overruling her demurrer to a complaint. The question presented is whether it states facts sufficient to constitute a cause of action against her. Stripped of non-essentials, the complaint discloses the following:

In 1944 Mary J. Gordon and her husband, Richard Gordon, acquired title to two lots of land in the town of Mullins, South Carolina, designated on a certain plat as Lots Nos. 18 and 19. Richard died intestate in 1951, survived by Mary and their five children. He also left surviving certain children by a previous marriage whose names are alleged to be unknown. Mary resided in a house on Lot 18. On or

about September 5, 1953, Mary, along with Daisey Gordon Mitchell and George Mitchell, her daughter and son-in-law, went to the office of A. H. Turbeville, plaintiff in this action, "for the stated purpose of entering into negotiations for the construction of a house on Lot No. 19". Plaintiff informed these parties that he could not construct a house upon said lot because Mary's children had an interest therein. (He did not then know that there were other children of Richard Gordon by a previous marriage.) Plaintiff further stated that he would be unwilling to construct said house unless he was paid a past-due account contracted by Mary and her deceased husband. A few days later the five children of Mary conveyed to her all of their right, title and interest in the lot on which the house was to be built and Mary paid the past-due account above mentioned.

On or about September 29, 1953, plaintiff, in the presence of Mary J. Gordon, commenced construction of the house. "At or about the time the house was approximately three-quarters completed, the defendant, Mary J. Gordon, told the plaintiff's agents to stop working thereon; immediately thereafter the plaintiff called upon the defendant, Mary J. Gordon, who thereupon stated that the plaintiff was building 'too nice a house'; after the discussion between the plaintiff and the defendant, Mary J. Gordon, at which time the plaintiff reminded and recalled the facts to Mary J. Gordon that Daisey G. Mitchell and George Mitchell had informed the plaintiff that Mary J. Gordon would make, execute and deliver to the plaintiff a promissory note and mortgage on the premises at the time of the completion of the aforesaid house to secure the unpaid balance of the costs of the labor and materials furnished and utilized in the construction of said house and that the said Daisey G. Mitchell and George Mitchell were to satisfy the aforesaid indebtedness on behalf of the defendant, Mary J. Gordon, Mary J. Gordon permitted, allowed and condoned the completion of the aforesaid house."

On or about December 10, 1953, plaintiff had prepared and presented to Mary J. Gordon for execution a note and mortgage in the sum of $3,708.99, which "due to reasons unknown to plaintiff" she refused to sign. (Apparently this amount represented the balance due for construction of the house. The complaint does not disclose the source of the payments previously made.) The construction of the house was completed during the early part of January, 1954, and was immediately occupied by Daisey and George Mitchell. George later died and thereafter Daisey vacated the premises. Since then Mary has rented the property and collected the rents but has failed to pay anything on plaintiff's indebtedness.

Joined as defendants along with Mary were all persons unknown claiming any interest in the premises. It was alleged that such unknown persons accepted the benefits of the improvements made on the premises by plaintiff and were thus unjustly enriched. Judgment was sought against both Mary and the unknown heirs for $3,708.99, representing the balance due for construction of the house, and for the further sum of $1,575.00 alleged to be the reasonable value of the property.

The Court below sustained the demurrer interposed in behalf of the unknown heirs but held that the complaint stated facts sufficient to constitute a cause of action against Mary J. Gordon.

It is well settled that a demurrer will not be sustained to a complaint which contains allegations entitling the plaintiff to any form of relief, and that such allegations, together with relevant inferences reasonably deducible therefrom, are to be liberally construed in the plaintiff's favor. *Lakewood Water Company v. Garden Water Company*, 222 S. C. 450, 73 S. E. (2d) 720; *Franks v. Anthony*, 231 S. C. 191, 97 S. E. (2d) 891.

While the complaint in the instant case is vague and indefinite in many respects, we think when liberally construed it states a cause of action against appellant

Mary J. Gordon. Apparently respondent claims no lien on the premises. We need only inquire if the complaint states facts showing any personal liability on the part of appellant. Her position is that she entered into no contract with respondent nor did she authorize the construction of this house. She says that the complaint clearly shows that the house was constructed at the instance of George and Daisey Mitchell and for their benefit and that the respondent relied solely upon their oral promise to pay the cost of same. It is argued that there is no basis for an implied promise to pay by appellant. But we think the allegations of the complaint reasonably warrant a different construction.

According to the complaint, appellant participated in the negotiations for the construction of the house. If the parties contemplated that the obligation to pay for same was to be solely that of George and Daisey Mitchell, there would have been no reason for respondent to require that sole ownership be vested in appellant. The fact that he did so rather indicates that he was looking to her for the cost of construction. If appellant assumed no obligation, it is difficult to see the basis of her complaint when the house was about three-fourths completed that respondent was building "too nice a house." When reminded by him at that time that his understanding was that she was to give a note and mortgage on the premises to cover the balance due, she acquiesced therein, thereby affording a basis for an estoppel to deny liability. *McClintic v. Davis,* 228 S. C. 378, 90 S. E. (2d) 364. It may be fairly inferred from the complaint that appellant was to execute a note and mortgage for the balance due and that said indebtedness was to be paid by Daisey and George "on her behalf". It is rather unreasonable to assume that the parties contemplated that respondent would build a house on a lot owned by appellant with no security other than the oral promise of her daughter and son-in-law to pay for same. Of course, the proof at the trial may show that such was the case but we cannot say that it clearly appears from the complaint.

There is some reference in appellant's brief to the  Statute of Frauds but this question was not presented to the Court below and cannot be raised here for the first time. There is also some suggestion that in no event is there any basis for the recovery of the item of $1,575.00 alleged as representing the reasonable value of the use of the house but, as pointed out by the Circuit Judge, "however untenable this part of the claim may be, its inclusion does not make the complaint demurrable." In fact, the extent of recovery, if any, is not now properly before us.

Affirmed, with leave to appellant to answer within twenty days from the filing of the remittitur.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.