## 17618

A. H. TURBEVILLE, doing business under the trade name and style of Mullins Builders Supply, Appellant, v. Mary J. GORDON, Richard Roe, Mary Doe, and also all other persons unknown, claiming any right, title, estate, interest in, or lien upon the real estate described in the complaint herein, as the heirs at law of Richard Gordon, deceased, defendants, of whom Mary J. Gordon is Respondent.

(113 S. E. (2d) 68)

58

*Messrs. Charles T. Speth* and *Woods & Woods,* of Marion, *for Appellant,*

*Elliot D. Turnage, Esq.,* of Darlington, *for Respondent, Mary J. Gordon,*

February 24,1960.

TAYLOR, Justice.

This is an appeal by the plaintiff from an order of the Court of Common Pleas for Marion County granting defendant's motion that the complaint be dismissed and the defendant be granted judgment on the pleadings and the costs be taxed against plaintiff. This case was previously before us wherein demurrer of the defendant, Mary Gordon, was overruled but sustained as to additional defendants. This Court affirmed the order of the Circuit Court, 233 S. C. 75, 103 S. E. (2d) 521, with the facts being stated as follows:

"This is an appeal by Mary J. Gordon from an order overruling her demurrer to a complaint. The question presented is whether it states facts sufficient to constitute a cause of action against her. Stripped of nonessentials, the complaint discloses the following:

"In 1944 Mary J. Gordon and her husband, Richard Gordon, acquired title to two lots of land in the town of Mullins, South Carolina designated on a certain plat as Lots Nos. 18 and 19. Richard died intestate in 1951, survived by Mary and their five children. He also left surviving certain children by a previous marriage whose names are alleged to be unkown. Mary resided in a house on Lot 18. On or about

September 5, 1953, Mary, along with Daisey Gordon Mitchell and George Mitchell, her daughter and son-in-law, went to the office of A. H. Turbeville, plaintiff in this action, for the stated purpose of entering into negotiations for the construction of a house on Lot No. 19. Plaintiff informed these parties that he could not construct a house upon said lot because Mary's children had an interest therein. (He did not then know that there were other children of Richard Gordon by a previous marriage.) Plaintiff further stated that he would be unwilling to construct said house unless he was paid a past-due account contracted by Mary and her deceased husband. A few days later the five children of Mary conveyed to her all of their right, title and interest in the lot on which the house was to be built and Mary paid the past-due account above mentioned.

"On or about September 29, 1953, plaintiff in the presence of Mary J. Gordon, commenced construction of the house. 'At or about the time the house was approximately three-quarters completed, the defendant, Mary J. Gordon, told the plaintiff's agents to stop working thereon; immediately thereafter the plaintiff called upon the defendant, Mary J. Gordon, who thereupon stated that the plaintiff was building "too nice a house"; after the discussion between the plaintiff and the defendant, Mary J. Gordon, at which time the plaintiff reminded and recalled the facts to Mary J. Gordon that Daisey G. Mitchell and George Mitchell had informed the plaintiff that Mary J. Gordon would make, execute and deliver to the plaintiff a promissory note and mortgage on the premises at the time of the completion of the aforesaid house to secure the unpaid balance of the costs of the labor and materials furnished and utilized in the construction of said house and that the said Daisey G. Mitchell and George Mitchell were to satisfy the aforesaid indebtedness on behalf of the defendant, Mary J. Gordon, Mary J. Gordon permitted, allowed and condoned the completion of the aforesaid house.'

"On or about December 10, 1953, plaintiff had prepared and presented to Mary J. Gordon for execution a note and mortgage in the sum of $3,708.99, which 'due to reasons unkown to plaintiff' she refused to sign. (Apparently this amount represented the balance due for construction of the house. The complaint does not disclose the source of the payments previously made.) The construction of the house was completed during the early part of January, 1954, and was immediately occupied by Daisey and George Mitchell. George later died and thereafter Daisey vacated the premises. Since then Mary has rented the property and collected the rents but has failed to pay anything on plaintiff's indebtedness.

"Joined as defendants along with Mary were all persons unknown claiming any interest in the premises. It was alleged that such unknown persons accepted the benefits of the improvements made on the premises by plaintiff and were thus unjustly enriched. Judgment was sought against both Mary and the unknown heirs for $3,708.99, representing the balance due for construction of the house, and for the further sum of $1,575.00 alleged to be the reasonable value of the use of the property."

To the foregoing complaint the defendant filed an amended answer in which she realleges and incorporates all matters set forth in the original answer and by way of further answer, pleads the statute of frauds as a bar to recovery, contending that plaintiff seeks to hold defendant liable on the oral promise to answer for the debt and liability of Daisey Mitchell and George Mitchell. Subsequent thereto, defendant also moved before the presiding Judge for an order dismissing the complaint and for judgment on the pleadings. After hearing thereon, an order was passed in which the defendant was granted judgment on the pleadings with certain costs taxed against the plaintiff, and it is from this order that plaintiff appeals.

The order of the presiding Judge is based upon the theory that Daisey and George Mitchell were the real debtors and that defendant had promised to execute security for the

payment of their debt. By reference to the complaint it will be seen, however, that it is alleged that it is the debt of the defendant, Mary Gordon, and the note and the martgage which she promised to give was to be satisfied by Daisey and George Mitchell "on behalf of the defendant, Mary J. Gordon." This precise theory was advanced in the former appeal by Mary Gordon but was rejected by this Court when it said:

"* * * We need only inquire if the complaint states facts showing any personal libility on the part of appellant. Her position is that she entered into no contract with respondent nor did she authorize the construction of this house. She says that the complaint clearly shows that the house was constructed at the instance of George and Daisey Mitchell and for their benefit and that the respondent relied solely upon their oral promise to pay the cost of same. It is argued that there is no basis for an implied promise to pay by appellant. But we think the allegations of the complaint reasonably warrant a different construction.

"According to the complaint, appellant participated in the negotiations for the construction of the house. If the parties contemplated that the obligation to pay for same was to be solely that of George and Daisey Mitchell, there would have been no reason for respondent to require that sole ownership be vested in appellant. The fact that he did so rather indicates that he was looking to her for the cost of construction. If appellant assumed no obligation, it is difficult to see the basis of her complaint when the house was about three-fourths completed that the respondent was building 'too nice a house'. When reminded by him at that time that his understanding was that she was to give a note and mortgage on the premises to cover the balance due, she acquiesced therein, thereby affording a basis for an estoppel to deny liability. *McClintic v. Davis,* 228 S. C. 378, 90 S. E. (2d) 364. It may be fairly inferred from the complaint that appellant was to execute a note and mortgage for the balance due and that said indebtedness was to be paid by Daisey and George

'on her behalf'. It is rather unreasonable to assume that the parties contemplated that respondent would build a house on a lot owned by appellant with no security other than the oral promise of her daughter and son-in-law to pay for same. Of course, the proof at the trial may show that such was the case but we cannot say that it clearly appears from the complaint." See, also, *Stackhouse v. Pure Oil Co.*, 176 S. C. 318, 180 S. E. 188.

The idea advanced here that the action in this case is founded upon an oral promise to pay the debts of another was rejected in the former appeal, *Turbeville v. Gordon, supra,* and is now the law of this case.

Plaintiff also contends that the hearing Judge erred in dismissing plaintiff's claim for $1,575.00 "for the reasonable value of the use of plaintiff's property since January 6, 1954."

Plaintiff or the builder may maintain an action under the Code of procedure upon his contract as if he had no lien for the security of his debt but the statute affords the only remedy for the enforcement of such lien, *Tenny v. Anderson Water, Light & Power Co.*, 67 S. C. 11, 45 S. E. 111; and the property right afforded the contractor or builder is the statutory mechanic's lien. *Metz v. Critcher,* 83 S. C. 396, 65 S. E. 394. Such rights as plaintiff may have had on the theory of a mechanic's lien have been adjudged adversely to its contention. We, therefore, see no merit in this contention.

For the foregoing reasons, we are of opinion that the order appealed from should be affirmed with respect to the $1,575.00 claimed as the reasonable value for the use of the property and reversed wherein it grants defendant judgment upon the pleadings with the assessment of costs; that the case should be remanded for a new trial by the Court of Common Pleas for Marion County in accordance herewith; and it is so ordered. Affirmed in part; reversed in part.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., concur.