17093

GAYNELLE SMITH McCLINTIC, Respondent, v. JAMES M. DAVIS, Appellant. JAMES M. DAVIS *ET AL.,* as Devisees under the Last Will and Testament of Sadie McC. Davis, Appellants, v. GAYNELLE SMITH McCLINTIC and R. A. McCLINTIC, Respondents.

(90 S. E. (2d) 364)

*Messrs. Williams & Parler,* of Lancaster, *for Appellants,*

*Messrs. Gregory & Gregory,* of Lancaster, *for Respond-ents,*

November 30, 1955.

Oxner, Justice.

These two cases, which were heard together, arose out of a dispute over a boundary line. Respondent Gaynelle Smith McClintic and appellants own adjoining lots on West Dunlap Street in the town of Lancaster. The disputed area consists of a small strip two feet in width and extending back

the full depth of the McClintic lot. There was a reference solely for the purpose of taking the testimony upon which the matter was heard by the Resident Circuit Judge, who in due course filed an order fixing the boundary line in accordance with the contention of Mrs. McClintic. This appeal followed.

Both lots were formerly a part of a two-acre tract of land, which was subdivided and sold under an order of the Court of Common Pleas of Lancaster County. On June 14, 1926, the Clerk of Court conveyed to Mrs. Sadie Davis a lot fronting "128 feet more or less" on Dunlap Street. After this controversy arose, Mrs. Davis died, leaving a will wherein she devised all of her property to appellants, her children. The lot owned by respondent, Mrs. McClintic, was conveyed by the Clerk of Court on July 13, 1926, to Miss Isabel Davis and was described as fronting 70 feet on Dunlap Street and extending back a depth of 146 feet. On February 14, 1944, Miss Isabel Davis conveyed this lot to Ben C. Hough. It is described in this deed, however, as having on West Dunlap Street a frontage of "approximately 72 feet." On October 6, 1950, Ben C. Hough conveyed the lot to respondent and in this deed it is again described as having a frontage of 72 feet on West Dunlap Street.

No courses are given in any of the foregoing deeds, nor is there any reference to a plat. Apparently none was made when the property was subdivided and sold under order of the · Court. After this controversy arose both parties had surveys made. The plat offered in evidence by appellants shows respondent's lot as fronting 70 feet on West Dunlap Street and their lot 129.55 feet on this street, or a combined frontage of 199.55 feet. The plat by respondent shows her lot as fronting 72 feet on West Dunlap Street and that of appellants 127 feet on this street, which would make the combined frontage of both lots 199 feet. It will be noted that according to the deeds from the Clerk of Court the combined frontage of these lots was 198 feet, or approxi-

mately one foot less than that shown by the present surveys. If respondent's contention is sustained, appellants' frontage will be óne foot less than that shown in the deed by the Clerk of Court to their mother. If appellants' contention as to the boundary line is accepted, they will have a frontage of 1.55 feet more than that called for in the deed by the Clerk of Court to their mother, and respondent will have a frontage exactly the same as called for in the deed by the Clerk of Court but two feet less than that stated in the subsequent deeds to this lot.

Miss Isabel Davis was a sister-in-law of Mrs. Sadie Davis. The claim of appellants is primarily based on a parol agreement as to the boundary line alleged to have been made in 1926 between Miss Isabel Davis and Mrs. Sadie Davis. The testimony shows that in 1926, or shortly thereafter, Mrs. Davis' husband built a garage which even under appellants' view as to the line encroached on the lot now owned by the respondent approximately one foot. The only testimony offered in support of this alleged agreement as to the boundary line is as follows: Miss Isabel Davis testified that it was her "understanding" that the "garage was on the line", and that she never made any claim beyond that. Appellant James M. Davis said that the garage "was supposed to be placed on the line." Appellant Mrs. McCauley testified that it was her "understanding" that the garage was on the line.

The claim of respondent rests largely on a parol agreement as to the boundary line alleged to have been made shortly after she purchased her lot in 1950. She further asserts that on the strength of this agreement and without any protest from appellants or their mother, she erected valuable improvements on her lot, and that appellants are now estopped to assert title to the disputed area.

The lot was vacant when purchased by respondent. She decided to construct thereon an apartment house. During the spring of 1951 a surveyor was employed to establish

the line. He contacted appellant James M. Davis with reference to the boundaries. The latter was present when the survey was made and pointed out the corners and otherwise assisted in the survey. Davis seemed to be satisfied with the line as established. Respondent agreed that he could use the paved driveway which she contemplated constructing adjacent to Mrs. Davis' lot.

There is some claim on the part of appellants that their mother was out of the state at the time this survey was made. However, respondent testified that when the excavation for the driveway was made, appellants' mother was present and when an old surveyor's stake was found directly on the line, Mrs. Davis made no comment. Respondent's husband testified: "When we excavated for the driveway, we found an old surveyor's stake directly on the line. Mrs. Sadie Davis was present at the time and I stated to her that the stake was evidence of the fact that we had established the line at the proper place and she made no comment."

After the boundary line was established and a plat made, respondent erected the apartment house and constructed a paved driveway along the line as established by the survey. Some time thereafter Mrs. Davis claimed that the driveway was two feet on her land and thereupon a violent dispute arose.

It is very doubtful whether appellants' testimony is sufficient to establish their claim that an agreement was made in 1926 fixing the boundary line between these lots. The owners of the two lots then occupied a close family relationship. It may be plausibly agreed that this testimony merely reflects some indefinite understanding or belief without any notion or effort on the part of the then owners to fix a disputed or uncertain boundary. See *Huddart v. McGuirk,* 186 Cal. 386, 199 P. 494; Annotations 69 A. L. R., page 1480 and 113 A. L. R., page 431. Be that as it may, we think, for the reason hereinafter stated, appellants are now estopped to assert title to the disputed area.

After the boundary line was established in 1951 with the aid of appellant James M. Davis, who expressed satisfaction with the result, respondent located her building and driveway on the basis of the correctness of the boundary then fixed. If appellants' claim is sustained, her driveway will be too narrow to afford access to her property. Certainly the conduct of James M. Davis is sufficient to create an estoppel. It is argued that his action was not binding on his mother. Assuming this to be true, Mrs. Davis' admitted conduct was sufficient to create an estoppel. She knew of the contemplated improvements and was present when the excavation was being made for the driveway. When told that the old stake found confirmed the fact that the boundary line had been located at the proper place, she remained silent and without protest permitted the construction of this driveway. She would now be estopped from asserting any claim to that part of the property upon which said driveway is located. *Marines v. Goblet,* 31 S. C. 153, 9 S. E. 803; *Columbia, Newberry & Laurens R. Co. v. Laurens Cotton Mills,* 82 S. C. 24, 61 S. E. 1089, 62 S. E. 1119; *Southern Railway Co. v. Day,* 140 S. C. 388, 138 S. E. 870; *Piedmont & Northern Ry. Co. v. Henderson,* 216 S. C. 98, 56 S. E. (2d) 740. In *Southern Railway v. Day, supra,* the following was quoted with approval [140 S. C. 388, 138 S. E. 875]: " 'So, if a party stands by, and sees another dealing with property in a manner inconsistent with his rights, and makes no objection, he cannot afterwards have relief. His silence permits or encourages others to part with their money or property, and he cannot complain that his interests are affected. His silence is acquiescence and it estops him.' "

Appellants, who acquired the property under the will of their mother, are bound by the foregoing estoppel. *Welch v. Carter,* 151 S. C. 145, 148 S. E. 697.

Finally, appellants argue that any acquiescence on the part of Mrs. Davis did not continue for a sufficient length of time to preclude her from disputing

the correctness of the boundary claimed by respondent. It is argued that the length of time required is usually that prescribed by the Statute of Limitations, citing *Klapman v. Hook*, 206 S. C. 51, 32 S. E. (2d) 882. But it was held in *Southern Railway v. Day,* *supra*, that an " 'estoppel may arise, even though the period of acquiescence is very short' ", and that in the case of estoppel, it is not necessary that such acquiescence continue for the period necessary to establish adverse possession.

In conclusion, it should be stated that the question of whether appellants can be required to remove that portion of the garage which respondent claims to be on her lot is not raised on this appeal, and we intimate no opinion thereabout.

All exceptions are overruled and the order appealed from is affirmed.

STUKES, TAYLOR and LEGGE, JJ., and T. B. GRENEKER, A. A. J., concur.