0322

Grady W. CROFT, Respondent, v. Leroy SANDERS, Appellant.
(323 S. E. (2d) 791)

Court of Appeals

*Thomas W. Weeks* of *Blatt & Fales,* Barnwell, *for appellant.*

*Thomas M. Boulware* of *Brown, Jefferies & Boulware,* Barnwell, *for respondent.*

Heard Sept. 17, 1984.

Decided Nov. 27, 1984.

GOOLSBY, Judge:

In this action by the respondent Grady W. Croft to quiet title and to determine the boundary line between his property and that of the appellant Leroy Sanders, an adjoining landowner, the questions on appeal relate to recognition and acquiescence and to adverse possession. The trial court declared Croft the owner in fee simple of the disputed property, a narrow triangular strip that lies between the northern boundary of Croft's land and the southern boundary of Sanders's property. We affirm.

In 1970, Croft granted Sanders one acre of land in exchange for a twenty-foot right-of-way through Sanders's property. To mark off the right of way and the acre of land, the parties drove a galvanized pipe into the ground within three feet of a fence erected by Croft in 1950 and within a foot of where Sanders believed the property line to be.

Although no survey was made at that time, one was conducted approximately eleven years later in January, 1981 by a surveyor employed by Croft. The survey revealed that the galvanized pipe was situated in Croft's property about thirty-two feet beyond the true boundary. A survey commissioned by

the trial court after Croft brought suit confirmed the results of the earlier survey.

Notwithstanding the results of the survey, Sanders maintains that Croft recognized and acquiesced in another line as the true boundary line and that Croft was therefore estopped from claiming to the true boundary line. Sanders also argues that he acquired title by adverse possession to that portion of Croft's property into which his southern boundary extended.

## I. Recognition and Acquiescence

Sanders first challenges the trial court's finding that he did not acquire title to the disputed property by Croft's recognition of and acquiescence in a certain line as the true boundary. He contends that the preponderance of the evidence shows that the true property line is now a line which Croft first recognized in 1950 when Croft built a fence and which Croft recognized again in 1970 when the parties drove the galvanized pipe into the ground.

A boundary line may be determined by mutual recognition of and acquiescence in a particular line [*Allen v. Johnson*, 27 S.C.L. (2 McMul.) 495 (1836); 11 C.J.S. *Boundaries* Section 79 at 652 (1938)]; thus,

> "if adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for a long period of time — usually the time prescribed by the statute of limitations—they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one. In other words, such recognition of, and acquiescence in, a line as the true boundary line, if continued for a sufficient length of time, will afford a conclusive presumption that the line acquiesced in is the true boundary line."

*Klapman v. Hook*, 206 S. C. 51, 57, 32 S. E. (2d) 882, 884 (1945), quoting from what is now 12 Am. Jur. (2d) *Boundaries* Section 85 at 620 (1964); *see*, Note, *South Carolina Law on Boundary Disputes*, 12 S. C. L. Q. 418 at 429-30 (1960). The determination of the question concerning what constitutes recognition and acquiescence depends upon the particular facts of the case. 11 C.J.S. *Boundaries* Section 79 at 652 (1938). Generally, the question turns on "the acts or declarations of the parties . . .,

on inferences or presumptions from their conduct, or on their silence." *Id.*

We do not agree with Sanders's first argument that the construction by Croft of a fence in 1950 constituted recognition by Croft of a line three feet from the fence as the true property line and established the line as the boundary between the two properties.

The mere existence of a fence between adjoining properties is not of itself sufficient to establish a boundary by recognition and acquiescence. 11 C.J.S. *Boundaries* Section 79 at 652-53 (1938). Obviously, a fence may be built between adjoining landowners for purposes that have nothing to do with fixing a boundary. *See,* 12 Am. Jur. (2d) *Boundaries* Section 88 at 624 (1964). Such is the case here. Croft, the evidence shows, erected his fence to secure a farm loan, intentionally placing it well inside his property line. There is no evidence Croft intended the fence, either when it was constructed or at some later time, to mark the boundary between Sanders's property and his own.

We likewise do not agree with Sanders's other argument that the driving by the parties of a galvanized pipe into the ground in 1970 constituted an act of recognition by Croft of a line within three feet of the fence Croft built in 1950 as the true boundary line.

When the parties in 1970 hammered the galvanized pipe into the ground, Croft did not agree that the pipe would thereafter mark the boundary separating the two properties. The record shows that Croft intended the pipe only to serve as the point from which he could be certain that the right-of-way granted him by Sanders would lead to his property. Far from agreeing that the pipe established the location of the true property line, Croft advised Sanders, "You go [sic] have to put this in writing in case that wouldn't be where the line was. I told him I did not know where the line was run through there. . . ."

Absent recognition by both Croft and Sanders that a particular line constituted the true property line, a new boundary could not be established by acquiescence. *See, Richardson v. Register,* 227 S. C. 81, 87 S. E. (2d) 40 (1955).

## II. Adverse Possession

Sanders also questions the trial court's finding that he did not acquire title to the disputed property by adverse possession. By a single exception, Sanders contends that he established adverse possession as "a matter of law in that the testimony was ... that [Croft] ... erected a fence on the boundary line in question over thiry years ago, and ... each party ... farmed up to the fence for a period of time over one year."[1]

Evidence was introduced that Croft farmed the land on the southern side of the fence and Sanders maintained a pasture on the other side. The evidence fails to disclose, however, when Sanders first occupied the disputed property and began using it for a pasture.

■ Under our law, an actual occupation of land that is open, notorious, hostile, exclusive, and continuous for a period of ten years as against the true owner establishes the occupant's title by adverse possession. *Mullis v. Winchester*, 237 S. C. 487, 118 S. E. (2d) 61 (1961); *King v. Hawkins*, 319 S. E. (2d) 361 (S. C. App. 1984); See, S. C. Code of Laws Section 15-67-210 (1976). Here, the trial court found that Sanders actually "possessed the land up to the fence" built by Croft in 1950, but it made no finding regarding how long Sanders had done so.

In any case, the mere possession of land, our Supreme Court has held, does not in and of itself manifest hostility toward the landowner. *Knight v. Hilton*, 224 S. C. 452, 79 S. E. (2d) 871 (1954). " 'Indeed, there is every presumption that such an occupancy is in subordination to the legal title.' " *Id.* 224 S. C. at 456, 79 S. E. (2d) 871, quoting from what is now 3 Am. Jur. (2d) *Adverse Possession* Section 34 at 118 (1962). The fact, then, that Sanders may have "farmed up" to Croft's fence does not establish his title to the disputed property.

Sanders claims, however, that he did more than simply occupy the disputed area. He says that he also paid taxes on the property and enclosed it with a wire fence. But the evidence does not support his claims.

---

[1] In his brief, Sanders also argues that his claim is under "color of title" because it is founded on an unrecorded 1872 plat. No exception raises this contention; therefore, we do not discuss it. *See, Mishoe v. Atlantic Coast Line R. Co.*, 186 S. C. 402, 197 S. E. 97 (1938).

Concerning the payment of taxes, the evidence shows that he paid taxes on less property than he owned, not more. The deed to his property describes it as containing 42 acres; however, he paid taxes only upon 40 acres. Regarding the wire fence, the evidence nowhere shows when Sanders built it.

The trial court committed no error, therefore, in failing to find that Sanders acquired title to the land in dispute by adverse possession.

Accordingly, the judgment of the trial court is

Affirmed.

SHAW and BELL, JJ., concur.