0506

Janie Beth KIRKLAND, Francis C. Tabor, Jenny J. Cleckley, James J. Cleckley, Jr., and Martha Cleckley Singletary, Appellants, v. Edgar F. GROSS, Shirley S. Gross and Coastal Lumber Company, Respondents.

(332 S. E. (2d) 546)

Court of Appeals

W. D. Rhoad, Bamberg, *for appellants.*

*J. Terry Poole,* of *Blatt & Fales,* Barnwell, *for respondents.*

Heard April 18, 1985.

Decided June 19, 1985.

SHAW, Judge:

The heirs of J. F. Carter, the appellants, and Mr. and Mrs. Ed Gross, the respondents, own adjacent tracts of land in Bamberg County. The Carter heirs brought this action to (1) determine their property line, (2) recover damages for timber sold by the Grosses, and (3) enjoin the Grosses from using a certain road. The master in equity relied on the Carter heirs' surveyor's testimony to establish the property line and decided the damages issue in the Carter heirs' favor. The circuit court reversed, basing its findings on the testimony of the Grosses' surveyor, enjoining the Carter heirs from interfering with the use of the road, and assessing costs against the Carter heirs. We affirm.

Actions to determine property lines are actions at law. *Uxbridge Co. v. Poppenheim,* 135 S. C. 26, 133 S. E. 461, 461 (1926). In actions at law "tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports [them]. The rule is the same whether the judge's findings are made with or without a reference." *Townes Associates Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976).

The oldest plat of the land in question was made by J. B. Black in 1873. A. R. Parler, Jr., the Carter heirs' surveyor, reran the lines on the ground, using a large sweet gum tree to mark a corner of the Carter tract. J. J. Foy, the Grosses surveyor, testified as to his interpretation of the Black plat. The Black plat shows a creek jutting out from a river and a line running through the middle of the creek bed with the notation, "Head the line." Foy testified a head is "a jutting out body related to the same formation." He testified further a line running through the middle of the creek bed would place the corner of the Gross tract 100 feet beyond the gum tree. The Carter heirs brought this action when the Grosses sold timber in this disputed area.

Mrs. Lydia Carter, the predecessor in title to the Carter tract, had hired a surveyor to establish the line in the middle 1950's. Mr. Alex Nummy, the predecessor in title to the Gross tract, moved his fence back from that line and paid for timber cut beyond it. However, Mr. Nummy testified (1) his fence was not erected to establish his line, but to enclose his dairy cows; and (2) he paid Mrs. Carter only to pacify her: "I didn't really accept anything. I just told her that if that satisfied her that I would give her the $250.00 and move my fence. . . . I didn't see where it made that much difference really." Furthermore, the Carter heirs testified they (1) never entered this disputed area nor made improvements, and (2) intended to possess only to the true boundary line.

### I. Location of Property Line

In an action "of trespass to try title . . . the [plaintiffs] must recover, if at all, on the strength of their own title; and the burden [is] upon [them] to prove just

title to the land." *Douglass v. Perry*, 245 S. C. 486, 141 S. E. (2d) 348, 349 (1965). The Carter heirs attempted to prove title by resurvey, acquiescence, and adverse possession.

## A. Resurvey

The Carter heirs first tried to establish title to the disputed land by resurvey. The trial court was correct in finding the Parler plat did not control over the Black plat. "The general rule is that where the lines of senior and junior surveys conflict, the lines of the senior survey control." 11 C. J. S. *Boundaries*, § 61 (1938). *cf. Faulkenberry v. Truesdell*, 36 S. C. L. (5 Strob.) 221, 225 (1850) (the general rule does not necessarily apply when the senior plat is unclear).

The trial court was also correct in concluding Foy's analysis was superior to Parler's because resurveys based on known monuments are controlling. "The relative weight to be given to evidence of location is a matter of law, and they rank in this order: (1) natural boundaries; (2) artificial marks, and (3) course and distance." *Southern Realty and Investment Co. v. Keenan*, 99 S. C. 200, 83 S. E. 39, 41-42 (1914). Foy testified his opinion was based on a creek bed drawn and referred to by Black. Parler testified his opinion was based on a gum tree not in existence at the time of the Black plat. Furthermore, the court was correct in giving more weight to Foy's testimony interpreting the Black plat than to Parler's testimony contradicting it because a resurveyor's "duty is to relocate ... the courses and lines at the same place where originally located by the first surveyor ... not to dispute the correctness of ... the original survey." 12 Am. Jur. (2d) *Boundaries* § 61 (1964).

## B. Acquiescence

The Carter heirs also tried to prove title by acquiescence. A disputed boundary line can be established by acquiescence of the parties. *Allen v. Johnson*, 27 S. C. L. (2 McMul.) 495, 496 (1836). " 'It is well established that if adjoining landowners occupy their respective premises up to a certain line which they mutually ... acquiesce in for a long period of time ... they are precluded from claiming that the boundary line thus ... acquiesced in is not the

true one.' " *Klapman v. Hook,* 206 S. C. 51, 32 S. E. (2d) 882, 884 (1945) (quoting what is now 12 Am. Jur. (2d) *Boundaries* § 85 (1964)).

However, acquiescence is a question of fact determined by the intent of the parties. *Croft v. Sanders,* ____ S. C. ____, 323 S. E. (2d) 791, 793 (Ct. App. 1984). "The mere existence of a fence between . . . properties is not . . . sufficient to establish a boundary line by . . . acquiescence [absent intent]." *Id.; Harrison v. Lanoway,* 214 S. C. 294, 52 S. E. (2d) 264, 266 (1949). "[A] fence may be built between adjoining landowners for purposes that have nothing to do with fixing a boundary." *Croft v. Sanders,* 323 S. E. (2d) at 793. Mr. Nummy's testimony he had no intention for his fence to establish the property line is evidence reasonably supporting the trial court's finding of lack of acquiescence.

### C. Adverse Possession

The Carter heirs also tried to prove title to the land in question by adverse possession. Title to real property can be acquired by adverse possession continued for a period of ten years. S. C. Code Ann. § 15-67-210 (1976).

However, to be adverse, possession must be "actual, open, notorious, exclusive, hostile, continuous . . . and uninterrupted." *King v. Hawkins,* 282 S. C. 508, 319 S. E. (2d) 361, (Ct. App. 1984). In this case, the circuit court found the Carter heirs had not actually occupied the disputed land. Janie Kirkland's testimony that her family did not use the property, had cut no timber from it, and had not gone on the property to see that Nummy's fence was kept up is evidence reasonably supporting the trial court's finding of lack of actual occupation. Because they did not take actual possession of the disputed land, the Carter heirs must rely on constructive possession under color of title to establish ownership by adverse possession. However, their constructive possession is dependent on the line established by the

Black plat, the oldest recognized plat on record. According to the Black plat, the disputed area is part of the Gross tract, not the Carter tract. Therefore, the Carter heirs likewise failed to establish constructive possession under color of title.

### II. Damages for Timber Sold

The Carter heirs' claim for damages for timber sold beyond the line running from the gum tree must fail in light of our conclusion they have not established title to property behind the line running through the middle of the creek bed. We have found no evidence the Grosses actually sold timber beyond the line running from the middle of the creek bed.

### III. Injunction from Use of Road

The record contains testimony reasonably supporting the trial court's finding the road to the Gross tract traversing the Carter tract has been used by the public for more than twenty years without interruption. There is evidence the Grosses, their predecessor in title, their neighbors, the county, and the school district have used and improved the road. This evidence prevents the Carter heirs from obtaining the injunction they sought, and is a proper basis for enjoining them from interfering with the road's use. A public road can be created by dedication. *Edgefield County v. Georgia-Carolina Power Co.*, 104 S. C. 311, 88 S. E. 801, 806 (1916). Acceptance of a dedication is evidenced "either by general public use or by the acts of the public authorities." *Outlaw v. Moise*, 222 S. C. 24, 71 S. E. (2d) 509, 512 (1952) (quoting Dillon, Municipal Corporations § 1090 (5th ed.)). Such use must be uninterrupted for at least twenty years. *Turnbull v. Rivers*, 14 S. C. L. (3 McCord.) 131, 138 (1825).

### IV. Costs of Action

The trial court assessed costs against the Carter heirs. Costs are allowed to the successful party. S. C. Code Ann. § 15-37-20 (1976). We find no merit in the Carter heirs' argument the Grosses did not succeed.

Affirmed.

BELL and GOOLSBY, JJ., concur.