THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
James W. Williams,       
Respondent,
 
 
 

v.

 
 
 
Otis David Gould,       
Appellant.
 
 
 

Appeal From Colleton County
Luke N. Brown, Jr., Circuit Court Judge

Unpublished Opinion No. 03-UP-153
Heard December 10, 2002  Filed February 
 20, 2003 

REVERSED AND REMANDED

 
 
 
Deborah R.J. Shupe, of Columbia; Robert J. Harte, of Aiken; for appellant.
Ronnie L. Crosby, of Hampton; for respondent.
 
 
 

PER CURIAM:           In this boundary line 
 dispute, Otis Gould appeals the trial courts order finding he trespassed on 
 property owned by James Williams, arguing the record evidence supports his acquiescence 
 of title defense.  We reverse and remand for a new trial.
 
 FACTS/PROCEDURAL HISTORY
 In June 1961, Raymond M. Gatch conveyed a parcel of land fronting 
 the Edisto River in Colleton County to G.M. Gould.  Sometime in 1962 or 1963, 
 Gould built a small cabin on the property.  In the early 1970s, Bill Hadley, 
 an adjoining landowner, dug a canal separating the property on which Goulds 
 house sat from his own.  The canal stretched from the river to  within 200 
 feet of state road S-15-30, the western border of the Hadley property.  A 
 few years later Gould gifted the back (non-waterfront) part of his lot to 
 Dolphus and Betty Bridges.  In July 1990, Gould conveyed the waterfront portion 
 to his son, Otis Gould.  The transfer deed clearly describes the waterfront 
 area as being 57.5 feet wide.  
 In November 1993, James Williams bought the former Hadley property 
 from First National Bank.  Prior to purchasing the land, Williams hired Gene 
 Whetsell, a registered land surveyor familiar with the area, to subdivide 
 the parcel into separate tracts.  Whetsell prepared a plat designating the 
 land as follows:  Tract A (1.72 acres), Tract B (11.15 acres), and Tract 
 C (2.32 acres).  The plat depicts Tract C bounded on the west by Tract 
 B, on the south by a canal, on the east by the Edisto River, and on the 
 north by the canal and property of Otis Gould and Dolphus Bridges. 
 [1]   
 The following year Williams notified Gould that he believed several 
 of Goulds structures were lying over his property line.  Although Gould subsequently 
 retained an attorney, the parties never resolved the matter.  
 In 1997 Williams again hired Whetsell to further 
 divide Tract C into three relatively uniform lots facing the Edisto River.  
 These lots were also designated A, B, and C.  Whetsells plat indicates 
 Lot A is the northern-most section of Tract C, and thus lies directly 
 across from the property owned by Gould and Bridges. 
 In January 1999, Williams filed a complaint for trespass, alleging 
 Gould had erected structures and placed sewerage lines across the common 
 property boundary.  Gould answered and, in addition to a general denial, 
 asserted the complete defense of acquiescence of title.  Gould contended both 
 his and Williams ancestors in title acquiesced to the northern edge of the 
 aforesaid canal as the boundary line between the two properties.  
 Following a bench trial on October 2, 2000, the trial court issued 
 an order adopting the boundary line established by Gene Whetsell, Williamss 
 expert, as the true dividing line between the properties.  As a result, the 
 court ordered the parties to split the costs of a new survey and plat reflecting 
 this boundary.  The trial court also found Gould had committed a trespass 
 and awarded $2,500 in attorneys fees to Williams.  This appeal followed.  
 
 LAW/ANALYSIS
 Standard of Review
 If a boundary dispute encompasses an issue of title, the trial thereon 
 is an action at law.  Knox v. Bogan, 322 S.C. 64, 472 S.E.2d 43 (Ct. 
 App. 1996).  In actions at law tried without a jury, the findings of fact 
 of the judge will not be disturbed on appeal unless found to be without evidence 
 which reasonably supports them.  Id. at 66, 472 S.E.2d at 45; see 
 Townes Assocs.  Ltd. v. City of Greenville, 266 S.C. 81, 221 S.E.2d 
 773 (1976).  Thus, the trial courts factual findings have the same force 
 and effect as a jury verdict unless the court committed some error of law 
 leading it to an erroneous conclusion or unless the evidence is reasonably 
 susceptible only of a conclusion opposite of [that] reached by the court.  
 Knox, 322 S.C. at 71, 472 S.E.2d at 47-48.  
 Discussion

 
 It is well settled that a boundary line may be established by mutual 
 recognition of and acquiescence in a particular line.  Croft v. Sanders, 
 283 S.C. 507, 509, 323 S.E.2d 791, 792 (Ct. App. 1984); see Kirkland 
 v. Gross, 286 S.C. 193, 197, 332 S.E.2d 546, 548-49 (Ct. App. 1985) (A 
 disputed boundary line can be established by acquiescence of the parties.).  
 Thus, if adjoining landowners occupy their respective premises up to a certain 
 line which they mutually recognize and acquiesce in for a long period of time 
 . . . they are precluded from claiming that the boundary line thus recognized 
 and acquiesced in is not the true one.  Knox, 322 S.C. at 71-72, 
 472 S.E.2d at 48 (quoting Klapman v. Hook, 206 S.C. 51, 57, 32 S.E.2d 
 882, 884 (1945)); see Gardner v. Mozingo, 293 S.C. 23, 26, 358 
 S.E.2d 390, 392 (1987).  In other words, if acquiescence in a boundary is 
 shown for a sufficient period of time, a conclusive presumption [arises] 
 that the line thus acquiesced in is the true boundary line.   Knox, 
 322 S.C. at 71-72, 472 S.E.2d at 48 (quoting Klapman, 206 S.C. at 57, 
 32 S.E.2d at 884).   
 The party claiming a boundary by acquiescence bears the burden of 
 proving it by a preponderance of the evidence. 
 [2]   See 11 C.J.S. Boundaries §§ 104, 116 (1938); 
 cf. Croft, 283 S.C. at 509, 323 S.E.2d at 792.  Acquiescence 
 itself is a question of fact determined by the intent of the parties.  Kirkland, 
 286 S.C. at 198, 332 S.E.2d at 549.  As such, it may be proved by any evidence 
 which would satisfy a person that the purported boundary had been accepted 
 by both of the adjoining landowners as a dividing line between them.  11 
 C.J.S. Boundaries at § 109.  Proof may be made by either direct or 
 circumstantial evidence.  See id. at § 116.  
 An express agreement is not required to establish a boundary by 
 acquiescence.  Knox, 322 S.C. at 72, 472 S.E.2d at 48.  To the contrary, 
 agreement may be inferred from or implied by the conduct of the parties. 
     Id.  The underlying rationale is based on the assumption that 
 owners never disputing a boundary for a long period of time consented to it 
 . . . .  11 C.J.S. Boundaries at § 104.  Thus, the [f]ailure to object 
 to an encroachment with knowledge that the owner thereof claims to that line 
 may amount to acquiescence establishing the line as a boundary . . . .  Id. 
 at § 79.  
 Precisely what 
 constitutes recognition and acquiescence depends upon the particular facts 
 of each case.  Croft, 283 S.C. at 509, 323 S.E.2d at 792.  In determining 
 whether the parties have acquiesced to a particular boundary, therefore, it 
 is necessary to review the acts or declarations of the parties and the 
 inferences or presumptions [arising] from their conduct.   Id. 
 at 509-10, 323 S.E.2d at 793 (citation omitted).  Recognition or acquiescence 
 may be shown by evidence of a partys words, conduct, or even his or her 
 silence.  12 Am. Jur. 2d Boundaries § 85 (1997); see Croft, 
 283 S.C. at 510, 323 S.E.2d at 793.  Examples of conduct indicating assent 
 to a boundary include the length of time and manner in which the adjoining 
 property was used; the building of monuments, fences, or other barriers; the 
 planting of trees, crops, etc.; the harvesting of timber, and the erection 
 of houses, buildings, or other structures.  See 11 C.J.S. Boundaries 
 at § 104.  Indeed, in this regard, all a party is required to show is that 
 the activities of the adjoining landowner are such that they provided notice.  
 12 Am. Jur. 2d Boundaries at § 85.  
 When a boundary line is acquiesced in by adjoining landowners, such 
 acquiescence is binding on the parties and their successors in interest.  
 12 Am. Jur. 2d Boundaries at § 83; see 11 C.J.S. Boundaries 
 at § 84 (Acquiescence in a boundary line is binding on the parties and those 
 claiming under them [their privies], but only the actual parties and their 
 privies are bound.).  
 In the instant case, the record clearly reflects that either Gould 
 or his father was in possession of the disputed property up to the northern 
 edge of the canal for a period of almost forty years.  Over the years the 
 Goulds built a fish cleaning table and a septic tank on the property, in addition 
 to a permanent river wall in front that extends to the edge of the canal.  
 Moreover, according to expert testimony in a videotape submitted by Williams, 
 the Goulds house is situated seventeen feet over the original 
 property line.  Despite these obvious and flagrant encroachments, the record 
 contains no evidence Williams predecessors in interest ever complained.  
 
 With one exception, the plats entered into evidence were prepared 
 by Williams own expert, Gene Whetsell, in 1968, 1976 (revised in 1989), 1982 
 (revised in 1993), and 1997. [3]   During his testimony 
 Whetsell admitted that none of the plats reflects an encroachment onto Williams 
 property.  As to the 1976 plat referencing the canal, Whetsell agreed it showed 
 the canals northern border as the boundary to the Gould property.  

 
 Furthermore, the testimony of all but one 
 [4] nearby landowner revealed a common understanding that the canal 
 was the dividing line between the Gould and Williams properties.  Otis Gould 
 expressly stated:  Far as I know, I own between the canal over to between 
 mine and Ricky Mays [property].  Mays, who owns the waterfront lot adjacent 
 to Gould on the other side, testified that they all assumed that it was the 
 canal was the border.  Dolphus Bridges, who owns the lot directly behind 
 Goulds along the canal, related that he always assumed that [the canal] 
 was the property line. 
 Lastly, William Raymond Buddy Gatch, whose father originally deeded 
 the land to G.M. Gould, explained that he had owned the riverfront lot next 
 to Ricky Mays since 1966, when he received it from his father.  Regarding 
 the canal, Gatch specifically stated that before Bill Hadley bought the (now) 
 Williams property, he and a surveying crew started at the highway and bushwhacked 
 their way to the river, coming out to a point that was fairly close to where 
 the canal is now.  Gatch further testified that he and a group of neighbors 
 were standing there when Hadley asked if they were satisfied with that  
 with that line, and everybody that was there said yes, that was copasetic 
 with everybody.  According to Gatch, that was the line Hadley later used 
 as a reference line to dig the canal. 
 [5] 
 Despite this 
 abundant testimonial and documentary support, the trial court found Gould 
 failed to present any evidence that established that any of the predecessors 
 in title to either tract ever agreed or acquiesced that the canal was the 
 boundary, and held, therefore, that Gould failed to meet his burden on this 
 issue.  This was clearly an error of law.  It is readily apparent from the 
 trial transcript, the final order, and Williams brief that the trial court 
 failed to properly apply the law of acquiescence of title to the facts of 
 this case.  Recognition and acquiescence does not depend upon an express agreement; 
 to the contrary, it may be inferred from all the relevant facts and circumstances 
 of each case.  Here, given the evidence cited above, it is obvious the trial 
 court overlooked the law in reaching its conclusion that no evidence 
 supported Goulds acquiescence defense.  
 Accordingly, because this conclusion in the trial courts order 
 was based on an error of law, the decision in favor of Williams is reversed.  
 The case, therefore, is remanded to the trial court for reconsideration of 
 the acquiescence of title question in light of this opinion. [6]   
 REVERSED and REMANDED.
 GOOLSBY, HUFF, and SHULER, JJ., concur.
 

 
 [1]   William R. Buddy 
 Gatch, the son of Raymond Gatch, owns the property on the other side of the 
 canal from Tracts A and B. 

 
 [2]   Some authorities, 
 however, have held that proof of acquiescence must be establishing by clear 
 and convincing evidence.  

 
 [3]   The 1976 plat was 
 prepared by surveyor Joe L. Grant based on data from Whetsells 1968 plat.   
 

 
 [4]   The only evidence offered by Williams in opposition 
 was the somewhat ambiguous and unobjected-to hearsay testimony of Billy Mays, 
 who owns a lot directly behind his brother Ricky.  

 
 [5]   Gatch who also owns 
 the land behind Dolphus Bridges stretching all the way to the highway, thus 
 abutting the canal, which runs to within 200 feet of that road, additionally 
 testified he always assumed that the canal followed his property line all 
 the way up from the river, and that his own southern property line was close 
 to the canal, i.e., within four to six feet.  Gatch noted that on the 1968 
 Whetsell plat, which was partly paid for by him, Whetsell ran the southern 
 line [of Gatchs property] where the canal is.  

 
 [6]   Williams concedes 
 attorneys fees are not recoverable in an action for trespass.  See 
 Giles v. Parker, 304 S.C. 69, 74, 403 S.E.2d 130, 133 (Ct. App. 1991).  
 Accordingly, the trial court should refrain from making such an award on remand.