671 S.E.2d 383

**James W. COKER, Appellant,**

v.

**Catherine G. CUMMINGS, Ida Dell Green, Jerome L. Green, Annette Green, Jeanette Green, Annie Harriot Green, Agnes Oree, Clayton L. Oree, Thomas Snype, and Fred Snype, Defendants,**

**Of Whom Catherine G. Cummings, Ida Dell Green, Jerome L. Green, Annette Green, Jeanette Green, and Annie Harriot Green are Respondents.**

**No. 4471.**

Court of Appeals of South Carolina.

Heard Oct. 7, 2008.

Decided Dec. 18, 2008.

Michael R. Daniel, of Elloree, for Appellant.

G. Trenholm Walker and Daniel S. McQueeney, Jr., both of Charleston, for Respondent Catherine A. Cummings.

D. Peters Wilborn, Jr., of Charleston, for Respondents Ida Dell Green, Jerome L. Green, Annette Green, Jeanette Green, and Annie Harriot Green.

KONDUROS, J.:

In this boundary dispute case, James Coker appeals the master-in-equity's grant of summary judgment in Respondents' favor finding Coker had acquiesced to the boundary lines. We affirm.

## FACTS

In 1985, Mott Fogle conveyed Lot 24 in the Smithville subdivision near Mount Pleasant to Jessie and Evelyn Gregg. However, in 1987 the Greggs conveyed the lot back to Fogle. In 1999, Fogle filed a suit regarding the boundary issue, which he later withdrew. In 2002, Coker purchased Lot 24 from Fogle. At the time Coker entered the contract to purchase the lot, he was unaware of a discrepancy between the boundaries as described on certain plats of the property and where the boundaries were physically located. In actuality, the lot contained less land than the plats depicted. Coker learned of the discrepancy in 1999 when he had a survey of the property performed in contemplation of the closing.

In 2003, Coker brought suit against Catherine Cummings, who owns Lots 25 and 26, and Ida Dell, Jerome L., Annette, Jeanette, and Annie Harriot Green, who own Lots 21, 22, and 23, seeking a declaratory judgment on the boundary line dispute. In 2004, Coker added Agnes and Clayton L. Oree and Thomas and Fred Snype, as defendants. In 2006, the defendants filed motions for summary judgment. The parties stipulated that the Orees and Snypes should be dismissed from the action.

The Greens purchased some of their property but the rest they obtained by an adverse possession action in 1986. Annie Green presented an affidavit stating she had cleared the property on lots 21, 22, and 23 in 1952 or 1953, began cultivating a garden, and no one had challenged or complained about the boundaries of her family's lots. However, the

Greens' counsel did admit "the plants do not go up exactly to where they claim the" boundary is located. Green's affidavit also stated that "in 1986 or 1987, Mr. Gregg attempted to come on to my famil[y's] lots, however, I instructed him as to the boundaries and asked that he move off the property, which he did." Additionally, she provided, "No one since Mr. Gregg has questioned the boundaries of the lots until the current dispute with Mr. Coker arose."

Cummings submitted an affidavit stating Lot 25 had been in her family since 1913 and her husband purchased Lot 26 in 1975. Further, she stated her son installed a home on Lot 25 in 1975 and has lived there permanently and without interruption since the mid–1970s. Additionally, she asserted "[f]or over 20 years, no one has complained about the location of his home or the location of the eastern boundary (which is approximately 50 feet behind the home)." Cummings also provided, "We had the land surveyed many years ago. The existing eastern boundary of Lot 25 is clearly marked with iron property stakes. Those stakes . . . are approximately 50 feet behind [my son's] house."

Coker also submitted an affidavit from a title examiner giving the title history for the lots implicated in the action. The affidavit asserted the Huguenin plat, prepared in 1870, and the Weston plat, prepared in 1951, depicted all the lots involved in the dispute to be approximately the same size and dimensions. Ben Coker, Coker's brother, stated in his deposition that Ms. Green informed his crew they were on her property when they went to perform a survey prior to Coker's purchase. Ben Coker testified the distances depicted on the Weston plat do not agree with the field distance.

The master granted the defendants summary judgment in a form order filed October 27, 2006. On December 8, 2006, the master entered a longer order, which Coker asserts the master instructed the Greens' attorney to draft at the hearing. The order provided Coker had "not countered the considerable proof presented by the defendants and there is no genuine issue of material fact." The master determined "all defendants have occupied their respective properties up to the de facto boundary lines (as shown on the Seabrook survey) by acquiescence, which the plaintiff's grantor and predecessors

have recognized without contest for a long period of time in excess of ten years." (citing *Knox v. Bogan*, 322 S.C. 64, 71–72, 472 S.E.2d 43, 48 (Ct.App.1996) ("It is well settled that if adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for a long period of time—usually the time prescribed by the statute of limitations—they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one.")). This appeal followed.[1]

## STANDARD OF REVIEW

The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder. *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002).

In determining whether a triable issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003). Even if evidentiary facts are not disputed, if only the conclusions to be drawn from them are, summary judgment should be denied. *Baugus v. Wessinger*, 303 S.C. 412, 415, 401 S.E.2d 169, 171 (1991). Summary judgment is not appropriate when further inquiry into the facts is desirable to clarify the application of law. *Tupper v. Dorchester County*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997).

## LAW/ANALYSIS

### I.  Timeliness of Appeal

Respondents argue this appeal should be dismissed for Coker's failure to file a timely appeal because the form order,

---

1. Respondents filed a motion to dismiss the appeal asserting Coker's appeal was not timely. We denied the motion but allowed them to address the issue in their brief.

issued October 27, did not mention a full order would follow; neither party filed a Rule 59(e), SCRCP, motion; the full order was issued December 8; and Coker appealed the full order and not the form order. We disagree.

A notice of appeal shall be served on all respondents within thirty (30) days after receipt of written notice of entry of the order or judgment. Rule 203(b), SCACR. "Rule 203(b) requires notice of entry of the order.... [T]he time to file a notice of appeal pursuant to Rule 203(b), SCACR, begins to run when written notice that the order has been entered into the record by the clerk of court has been received." *Upchurch v. Upchurch,* 367 S.C. 16, 24, 624 S.E.2d 643, 647 (2006).

> The notice of appeal in a case appealed from the Court of Common Pleas must be served on all respondents within thirty days after receipt of written notice of entry of the order or judgment. The requirement of service of the notice of appeal is jurisdictional, *i.e.,* if a party misses the deadline, the appellate court lacks jurisdiction to consider the appeal and has no authority or discretion to "rescue" the delinquent party by extending or ignoring the deadline for service of the notice.

*Elam v. S.C. Dep't of Transp.,* 361 S.C. 9, 14–15, 602 S.E.2d 772, 775 (2004) (citations omitted).

In *Leviner v. Sonoco Products Co.,* 339 S.C. 492, 493, 530 S.E.2d 127, 127–28 (2000), the trial court filed a form order on January 10, 1997, and neither party filed a Rule 59(e), SCRCP, motion asking for a clarification within the ten day period following the order. The trial court filed a full written order on February 10, 1997, which the supreme court found untimely because under Rule 59(e), the trial court has only ten days from entry of judgment to alter or amend an earlier order on his own initiative absent a "reservation" of jurisdiction in the form order. *Id.* at 494, 530 S.E.2d at 128; *see also* Rule 203(b)(1), SCACR ("When a form or other short order or judgment indicates that a more full and complete order or judgment is to follow, a party need not appeal until receipt of written notice of entry of the more complete order or judgment."). However, the January form order contained no such reservation, and the supreme court found because no timely

Rule 59 motion was made nor timely *sua sponte* order filed under Rule 59(e), the January form order "matured" into a final judgment. *Leviner,* 339 S.C. at 494, 530 S.E.2d at 128. Therefore, the order filed on February 10 was a nullity because the trial court no longer had jurisdiction over the matter. *Id.*

We find *Leviner* distinguishable from the present case. Because Coker did not receive notice of the form order until he received the full order, the time for him to file the appeal from the form order did not begin to run until he received the full order. Thus, his appeal was timely. Further, although the form order did not mention the full order would follow, the master instructed one of the defendants' attorneys to draft the longer order. Therefore, the master reserved jurisdiction and could enter the full order.

## II. Doctrine of Acquiescence

█ Coker argues the master erred in finding the evidence failed to raise any justiciable issue of fact, and thus, concluding the defendants were entitled to summary judgment. We disagree.

█ "A boundary dispute is an action at law, and the location of a disputed boundary line is a question of fact." *Bodiford v. Spanish Oak Farms, Inc.,* 317 S.C. 539, 544, 455 S.E.2d 194, 197 (Ct.App.1995) (citations omitted). "A disputed boundary line can be established by acquiescence of the parties." *Kirkland v. Gross,* 286 S.C. 193, 197, 332 S.E.2d 546, 548–49 (Ct.App.1985), *receded from on other grounds by Boyd v. Hyatt,* 294 S.C. 360, 364 S.E.2d 478 (Ct.App.1988). "[A]cquiescence is a question of fact determined by the intent of the parties." *Id.* at 198, 332 S.E.2d at 549.

> [I]f a party stands by, and sees another dealing with property in a manner inconsistent with his rights, and makes no objection, he cannot afterwards have relief. His silence permits or encourages others to part with their money or property, and he cannot complain that his interest[s] are affected. His silence is acquiescence and it estops him.

*McClintic v. Davis,* 228 S.C. 378, 383, 90 S.E.2d 364, 366 (1955) (quoting *S. Ry. v. Day,* 140 S.C. 388, 138 S.E. 870 (1926)).

"If adjoining landowners occupy their respective premises up to a certain line, which they mutually recognize and acquiesce in for a long period of time, they are precluded from claiming the boundary line thus recognized and acquiesced in is not the true one." *Gardner v. Mozingo,* 293 S.C. 23, 26, 358 S.E.2d 390, 392 (1987). "In other words, such recognition of, and acquiescence in, a line as the true boundary line, if continued for a sufficient length of time, will afford a conclusive presumption that the line thus acquiesced in is the true boundary line." *Knox v. Bogan,* 322 S.C. 64, 72, 472 S.E.2d 43, 48 (Ct.App.1996). The length of time required is usually that prescribed by the statute of limitations. *Id.* However, acquiescence can be established even if the period of time is very short; acquiescence need not continue for the period necessary to establish adverse possession. *McClintic,* 228 S.C. at 384, 90 S.E.2d at 366. For a new boundary to be established by acquiescence, both parties must recognize a particular line constituted the true property line. *See Croft v. Sanders,* 283 S.C. 507, 510, 323 S.E.2d 791, 793 (Ct.App.1984).

Additionally, when boundary lines have "been located and designated by monuments and there is a discrepancy between the calls for these monuments and courses and distances shown by a plan referred to in the conveyance, the normal rule as to the controlling effect of calls for monuments will be followed." *Klapman v. Hook,* 206 S.C. 51, 55, 32 S.E.2d 882, 883 (1945). "[U]nder the rules for determining disputed boundaries 'the quantity of land named in the deed is ordinarily one of the lowest in the scale of importance.'" *Id.* at 55–56, 32 S.E.2d at 883 (quoting *Holden v. Cantrell,* 100 S.C. 265, 84 S.E. 826 (1915)).

When a party makes a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." *S.C. Elec. & Gas Co. v. Combustion Eng'g, Inc.,* 283 S.C. 182, 188–89, 322 S.E.2d 453, 457 (Ct.App.1984). If the adverse party

does not respond accordingly, the trial court shall enter summary judgment against him if appropriate. *Id.* at 189, 322 S.E.2d at 457. When a party makes no factual showing in opposition to a motion for summary judgment, the trial "court must grant summary judgment to the moving party if, under the facts presented, the latter is entitled to summary judgment as matter of law." *Id.*

Coker offered plats and an affidavit in support of his contention the boundaries on the ground are incorrect. However, the record contains nothing to dispute Respondents' evidence they have lived on their property with the boundaries as they claim for at least twenty years. The plats simply show that at some point, the boundaries may have been as Coker asserts they were intended. Further, the affidavit is purely speculative as to what happened, and thus, does not raise a material question of fact. Accordingly, the master did not err in granting summary judgment and the order is

**AFFIRMED.**

ANDERSON and WILLIAMS, JJ., concur.