776 S.E.2d 96

**Kay Howell JORDAN, Marion Howell Tolson, and Lewis Virgil Howell, Respondents,**

v.

**Betty L.S. JUDY, Appellant.**

**Appellate Case No. 2013–002129.**
**No. 5334.**

Court of Appeals of South Carolina.

Heard March 11, 2015.
Decided July 22, 2015.

342

Robert F. McCurry, Jr., of Horger Barnwell & Reid, LLP, of Orangeburg, and James B. Richardson, Jr., of Columbia, for appellant.

Woodrow Grady Jordan, of Smith, Jordan and Lavery, P.A., of Easley, for respondents.

KONDUROS, J.

In this boundary dispute action, Betty L.S. Judy appeals the trial court's setting of the boundary line, contending it was arbitrary and the only reasonable inference was the boundary should be set where prior plats and surveys showed it. We affirm.

## FACTS/PROCEDURAL HISTORY

Wilbur L. Judy, Sr. and John A. Howell, Jr. owned adjoining tracts of land in Dorchester County (the Judy Property and the Howell Property, respectively). In the early 1970s, Interstate 95 was constructed next to their properties. They both allowed the Department of Transportation to remove dirt from their respective properties, in turn creating a pond on each property. Between the ponds was a strip of land known as the dike or dike road. Both owners used the dike.

John died, leaving the Howell Property to his wife, Marion S. Howell. Marion placed a gate across the road through the Howell Property leading to the Judy Property because she was concerned drugs were being used at the ponds. According to Kay Howell Jordan, John and Marion's daughter, Marion gave Wilbur a key to the gate but the problems continued. Marion changed the lock and gave Wilbur a new key. Because the problems still continued, she changed the lock again and according to Kay tried to give Wilbur a new key, which he refused. Wilbur and Betty's son, Wilbur Judy, Jr. (Roy), testified his family was eventually denied access through the Howell Property.

Wilbur died in 1993, leaving his property to his wife, Betty. According to Roy, he began investigating where the boundary line was located between the two properties after Marion blocked driving access to the Judy Property through the Howell Property. Roy had a survey prepared, which showed a billboard John had constructed was actually on the Judy Property. Betty filed a lawsuit against Marion and another neighbor, Ronnie Elrod,[1] for trespass and an easement. *See Judy v. Howell*, Op. No 2004–UP–199, 2004 WL 6250802 (S.C. Ct.App. filed Mar. 24, 2004) (*Judy II* ); *Judy v. Howell*, Op.

---

1. To access the Judy Property, the Judy family first had to cross Elrod's property before they could cross the Howell Property.

No.2001–UP–423 (S.C. Ct.App. filed Oct. 8, 2001) (*Judy I* ). The master found and this court affirmed the easement action was barred by res judicata due to an earlier action Wilbur brought that was dismissed after his death. *Judy I* at 4. However, this court reversed the master's decision that the trespass action was barred by res judicata and remanded that action for trial. *Judy I* at 5. Following trial, this court affirmed the master's finding the billboard was on the Judy Property. *Judy II* at 3. The court noted the parties had not asked the master to determine the boundary of the properties and thus it was not preserved for this court's review on appeal. *Judy II* at 3.

Marion later died, leaving the Howell Property to her children, Kay, Marion Howell Tolson (Marion T.), and Lewis Virgil Howell (collectively, the Howells). At some point after losing access through the Howell Property, the Judy family began accessing their property by coming down a narrow path beside the railroad tracks, with the railroad's permission.[2] After Roy received the survey around 1995, he installed a fence along what he believed was the property line, which caused the Howells to lose vehicle access to the dike.

The Judy and Howell families met several times and reached a settlement in 2009 that allowed the Judy family to travel over the Howell Property to get to the Judy Property and to share the dike. The trial court found the settlement agreement unenforceable.

On August 12, 2010, the Howells filed a complaint against Betty, requesting a declaratory judgment that the boundary line of the properties is in the center of the dike or in the alternative, as shown in an attached plat. They also requested the court issue an order of quiet title declaring the property line as requested. Further, they contended if the court did not set the property line as they requested, they were entitled to an easement on the dike. Additionally, they asserted Betty should be estopped from denying them access to the dike. Betty filed an answer denying most of the complaint and requesting the court dismiss the complaint.

---

2. At trial, a letter and document were introduced showing an easement from the railroad to Wilbur but it was not executed or recorded.

At trial, Roy was present on Betty's behalf with her power of attorney. Lewis Edward Jordan, Kay's husband, testified John and Wilbur had agreed the dike was the boundary line for the properties and had used it without any problems. Roy testified that "to the best of [his] knowledge," Wilbur and John had not "fussed about" the dike. The Howells and Kay's husband testified the Howell family and the Judy family both maintained the dike, but Roy testified only he did.

Betty sought to qualify Ben Coker, Jr. as an expert in land surveying, but the Howells objected. The trial court did not qualify him in surveying because he was not licensed as a land surveyor and was not formally educated in land surveying. The court did qualify him as an expert in the area of field work. He testified about the field work he did in 1995 for a plat (Ashley Plat) for the Judy family signed by Paul Clifton Lawson, Jr. He used a 1927 plat (F.A. Moorer Plat) as a basis for his plat, and his plat agreed with that plat. He testified the measurements on the F.A.

Moorer Plat were "very crude measurements compared to our measurements now." Coker testified he also tried to locate points on a plat from 1867 (1867 Plat) but could not locate any of the points shown on it. He indicated the deeds for the two properties were ambiguous and did not show metes and bounds. He admitted on cross-examination one of the measurements he found in doing his field work did not match the F.A. Moorer Plat. He also stated his field work did not match with the 1867 Plat. The Ashley Plat showed the dike as being located completely on the Judy Property.

John David Bass testified as an expert in surveying on behalf of the Howells. He prepared a plat in 1998 (Bass Plat) for the Howells. He testified he used several old plats and surveys for the basis of his plat. He indicated he used the 1867 Plat, but it did not close perfectly because old compasses only measured to the nearest degree. He testified he took the error and "pushed" it into Interstate 95. He testified his plat agreed with the 1867 Plat while the Ashley Plat agreed with the F.A. Moorer Plat. On cross-examination, he testified he could have pushed the error anywhere. On redirect, Bass testified that by pushing the error into Interstate 95, it

actually benefited the Judy Property. He testified he based his plat off of one iron. He testified the Ashley Plat relied on a sweetgum tree shown on the F.A. Moorer Plat but because the sweetgum tree was no longer there when the Ashley Plat was created, it relied on angles and bearings without knowing if it was correct. Because of that, the boundary line could have been moved either way. The Bass Plat shows the dike as approximately half on the Howell Property and half on the Judy Property, divided diagonally down the middle.

Coker testified that when Bass made his plat, because he could not find the corners shown on the plat he was using, he drove or set his own corners except for the one he found. Lawson testified he agreed with Bass the 1867 Plat did not close but thought Bass should not have placed all of the error in one spot because it was accumulated error.

Following the trial, the trial court found "the property line [was] located in the middle of the dike road." It noted the two professional surveyors who testified disagreed as to where the property line was located based on their field work and prior surveys. It found "the parties['] past actions and usage of the property are compelling evidence in [its] determination." It granted the parties "an easement right in and to the dike road for the purposes of ingress and egress over and across the earthen dike." Betty filed a motion for reconsideration, requesting the trial court reconsider the testimony regarding the usage of the dike, the fencing placed upon the dike, and the documentation and exhibits regarding those issues. She also requested the trial court reconsider the testimony, documentation, and evidence presented regarding the plats, witnesses, and surveyors. She contended the trial court erred in failing to rule the Ashley Plat correctly showed the boundary line. The trial court denied the motion. This appeal followed.

## STANDARD OF REVIEW

"A boundary dispute is an action at law and the location of a disputed boundary line is a question of fact." *Bodiford v. Spanish Oak Farms, Inc.*, 317 S.C. 539, 544, 455 S.E.2d 194, 197 (Ct.App.1995) (citation omitted). On appeal of an action at law tried without a jury, we will not disturb the

trial court's findings of fact unless no evidence reasonably supports the findings. *Townes Assocs. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). Additionally, the appellate court can correct errors of law. *Okatie River, L.L.C. v. Se. Site Prep, L.L.C.,* 353 S.C. 327, 334, 577 S.E.2d 468, 472 (Ct.App.2003); *see also Linda Mc Co. v. Shore,* 390 S.C. 543, 555, 703 S.E.2d 499, 505 (2010) ("In an action at law, the appellate court will correct any error of law, but it must affirm the special referee's factual findings unless there is no evidence that reasonably supports those findings." (internal quotation marks omitted)). The trial court's factual findings in a law action are equivalent to a jury's findings. *Chapman v. Allstate Ins. Co.,* 263 S.C. 565, 567, 211 S.E.2d 876, 877 (1975). Questions regarding credibility and the weight of the evidence are exclusively for the trial court. *Sheek v. Crimestoppers Alarm Sys.,* 297 S.C. 375, 377, 377 S.E.2d 132, 133 (Ct.App.1989). "We may not consider the case based on our view of the preponderance of the evidence, but must construe the evidence presented to the [trial court] so as to support [its] decision wherever reasonably possible." *Id.* "We must look at the evidence in the light most favorable to the respondents and eliminate from consideration all evidence to the contrary." *Id.*

## LAW/ANALYSIS

■ Betty argues the boundary line drawn by the trial court is arbitrary. She asserts the record contains no evidence either party acted as though the boundary between the properties was along the dike. We disagree.

■ "A disputed boundary line can be established by acquiescence of the parties." *Kirkland v. Gross,* 286 S.C. 193, 197, 332 S.E.2d 546, 548–49 (Ct.App.1985), *receded from on other grounds by Boyd v. Hyatt,* 294 S.C. 360, 364 S.E.2d 478 (Ct.App.1988). "[A]cquiescence is a question of fact determined by the intent of the parties." *Id.* at 198, 332 S.E.2d at 549.

[I]f a party stands by, and sees another dealing with property in a manner inconsistent with his rights, and

makes no objection, he cannot afterwards have relief. His silence permits or encourages others to part with their money or property, and he cannot complain that his interest[s] are affected. His silence is acquiescence and it estops him.

*McClintic v. Davis,* 228 S.C. 378, 383, 90 S.E.2d 364, 366 (1955) (internal quotation marks omitted).

"If adjoining landowners occupy their respective premises up to a certain line, which they mutually recognize and acquiesce in for a long period of time, they are precluded from claiming the boundary line thus recognized and acquiesced in is not the true one." *Gardner v. Mozingo,* 293 S.C. 23, 26, 358 S.E.2d 390, 392 (1987). "In other words, such recognition of, and acquiescence in, a line as the true boundary line, if continued for a sufficient length of time, will afford a conclusive presumption that the line thus acquiesced in is the true boundary line." *Knox v. Bogan,* 322 S.C. 64, 72, 472 S.E.2d 43, 48 (Ct.App.1996) (internal quotation marks omitted). The length of time required is usually that prescribed by the statute of limitations. *Id.* However, acquiescence can be established even if the period of time is very short; acquiescence need not continue for the period necessary to establish adverse possession. *McClintic,* 228 S.C. at 384, 90 S.E.2d at 366. For a new boundary to be established by acquiescence, both parties must recognize a particular line constituted the true property line. *Croft v. Sanders,* 283 S.C. 507, 510, 323 S.E.2d 791, 793 (Ct.App.1984).

In *Coker v. Cummings,* 381 S.C. 45, 55, 671 S.E.2d 383, 388 (Ct.App.2008), the appellant "offered plats and an affidavit in support of his contention the boundaries on the ground are incorrect." However, this court found "the record contains nothing to dispute Respondents' evidence they have lived on their property with the boundaries as they claim for at least twenty years. The plats simply show that at some point, the boundaries may have been as [the appellant] asserts they were intended." *Id.*

Witnesses from both sides testified Wilbur and John operated as though the dike was the boundary between their two

properties since the Department of Transportation created it. Kay's husband testified Wilbur and John decided where the boundary would be and operated as if it was the boundary. The location of a boundary in a boundary dispute is a question of fact. Also, whether the parties acquiesced is a question of fact. In an action at law, we are to affirm the trial court's findings of fact if any evidence supports those findings. Here, the record contains evidence to support the finding that Wilbur and John recognized or acquiesced that the dike was the boundary.[3] Accordingly, the trial court did not err in finding the parties' actions dictated the line be set along the dike.[4] Therefore, the trial court's order is

**AFFIRMED.**

THOMAS and GEATHERS, JJ., concur.

---

**3.** We note this court has previously held "a compiled line, created merely for the convenience of presently avoiding a dispute, is unacceptable as a basis for an order establishing a true boundary line." *Clements v. Young,* 310 S.C. 73, 75, 425 S.E.2d 63, 64–65 (Ct.App.1992). In that case, a surveyor testified he created a tie line as a matter of convenience to complete a partition. *Id.* at 75, 425 S.E.2d at 64. The special referee determined the tie line was the boundary of the property, but this court reversed finding the record contained no evidence the tie line was the boundary between the two properties. *Id.* at 74–76, 425 S.E.2d at 64–65. The court found "the tie line is an artificially compiled line which does not evidence the true boundary between the properties." *Id.* at 75, 425 S.E.2d at 64. In *Clements,* no testimony or other evidence was presented the owners of the properties believed the tie line was the border of their properties. Here, all the parties testified they had always acted as though the dike was the boundary between their two properties. Therefore, we do not find *Clements* applicable here.

**4.** Betty also contends the only reasonable inference from the evidence is the boundary line is located in the place identified in the F.A. Moorer Plat, the 1970 Highway Department maps, and the Ashley Plat. Based on our decision that the trial court properly found the parties had acquiesced in the boundary line, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).