# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Click Properties, LLC and Hyper Formance, LLC, Respondents,

v.

Thomas SC Properties, LLC and All-Tech Tire and Auto Repair, LLC, Appellants.

Appellate Case No. 2022-001499

———————

Appeal From Pickens County
Perry H. Gravely, Circuit Court Judge
Alex Kinlaw, Jr., Circuit Court Judge

———————

Opinion No. 6105
Heard December 4, 2024 – Filed March 12, 2025

———————

**AFFIRMED**

———————

Scarlet Bell Moore, of Greenville, for Appellants.

Gwendolyn G. Martin, Bradford Neal Martin, and Laura Wilcox Howle Teer, all of Bradford Neal Martin & Associates, PA, of Greenville, for Respondents.

———————

**THOMAS, J.:** After a jury verdict and circuit court order granting injunctive relief to Click Properties, LLC and Hyper Formance, LLC (Respondents) in this action alleging nuisance per se, negligence, acquiescence, and a prescriptive easement, Thomas SC Properties, LLC and All-Tech Tire and Auto Repair, LLC (Appellants) appeal, arguing the circuit court erred in denying their motions (1) to

amend their answer; (2) to dismiss; (3) for summary judgment; (4) for directed verdict; and (5) to reconsider. We affirm.

## FACTS

This action involves a dispute between adjacent landowners in Pickens County. Both properties were purchased subject to a 1996 survey of record (the Ramey survey), which shows a driveway primarily on Respondents' property, 3668 Calhoun Memorial Highway (3668), and a turnaround at the end of the driveway, primarily on Appellants' property, 3670 Calhoun Memorial Highway (3670). Respondents filed this action. After a hearing, the circuit court denied Appellants' motion for summary judgment on the causes of action for nuisance per se, negligence, acquiescence, prescriptive easement, and quiet title; granted Respondents' motion for summary judgment as to easement by estoppel; held in abeyance the issue of an injunction; and acknowledged it had denied Appellants' motion to amend "a few months" before trial. The case proceeded to trial.

Brent Click of Click Properties testified Respondents rented 3668 from Mark Smith beginning in January 2013 and opened an auto body shop. Respondents accessed the property via the gravel driveway on the western border of 3668. At the time, the driveway and the turnaround appeared to access only 3668. Also at that time, Greg Grissenger owned All-Tech, an auto repair shop on 3670, which was then owned by his landlord, Jimmy Watkins.

When Respondents began renting 3668, the property had two buildings. Smith, who owned 3668 between 2005 and 2017, testified the back building had spider cracks, was flat, and was in good condition. He testified the cracks remained the same from 2005 until 2017, when he sold the property to Respondents. Click rented the back building, which he testified had insignificant cracks in the floor and some sheetrock damage. However, the floor was flat and allowed water to run out of the doors after pressure washing. Respondents installed a paint booth, which required the flat floor. Click testified he requested and received permission from his landlord to add a carport to the front of the building, which encroached into the turnaround. Because a car lift was going to be used on the carport, Respondents poured a very thick slab of concrete pad, measuring between ten and fourteen inches. According to Click, the driveway and turnaround were gravel, which he replenished multiple times. Click also testified no one from All-Tech used the turnaround.

In 2014, Grissenger sold All-Tech to his son-in-law, Jonathan Thomas. In 2017, Respondents purchased 3668 from Smith. Click was given a copy of the Ramey survey at closing. Because it indicated portions of the turnaround and the driveway were part of 3670, Click asked the closing attorney and Smith, who both told him he "had a right to [it]." After Respondents purchased 3668, Greg Porter, who owned the property adjacent on the east side of 3668, placed a fence blocking Respondents from accessing their back building from the east; thus, Click installed a new door into the building. A few months later, Click arrived at 3668 to find a gate he had installed had been cut off by the hinges, and an excavator was taking down trees. Thomas thereafter excavated the property.

Click testified the rise from the driveway to Appellants' property was originally approximately ten or twelve feet. Click explained that after the excavation, he could stand at the top of the driveway looking down thirty-six feet into the bed of a twenty-two-ton dump-truck that "look[ed] like a toy." Click testified Respondents' hill sank from lack of lateral support. According to Click, the driveway dropped, and water now runs down the hill into the front building; in addition, the outer corner of the property dropped seven feet. Click also testified that the new concrete pads he installed suffered damage, dropping due to loss of lateral support, and were no longer able to accommodate the larger, heavier vehicles that had been part of his business. The extra concrete used after the carport pads were completed dropped more than a foot. Click estimated Respondents' lost work was valued at approximately $20,000. Click testified about other damage, including four waterline breaks due to the loss of lateral support and damage to the septic system. According to Click, the back building was sliding and collapsing toward the excavation. Click estimated damage to the property of $83,000 and testified he spent numerous hours attempting to mediate the damage, including grading and maintaining the gravel. In addition to evidence of outside damage caused by the excavation, Respondents introduced evidence of significant damage to the buildings, including cracked, broken, and uneven concrete floors, elevation changes in the buildings, air pockets, cabinets that became uneven, and cracks in the concrete block walls. Shelly Click, Click's wife, described the excavation as removing fifty feet of the ninety-foot wide turnaround and at least half of the driveway.

William David Hall, qualified as an expert in site engineering, investigated the site and testified the back building had existed since 1978. He expressed concern with the embankment Thomas excavated because "[r]arely, if ever, are embankments graded out like that and left unattended to without some sort of mitigation being made for the loss of material, [such as] retaining wall [or] soil milling. There are a

lot of options . . . ."  Hall testified he was concerned about the stability of the slope because cars drive in the area.  He estimated the cut was twelve feet at its highest point and there was no safety fence.  Hall explained there were two embankments, one that tested "in pretty good shape" and one that tested unsafe.  He provided a graph indicating the embankments.  Hall opined the unsafe embankment was in a situation of imminent failure and required mitigation of lateral support.  He recommended a retaining wall ten feet high and a safety fence.  Hall confirmed damage to sewer and water lines, carport awnings, and floors.  He estimated the cost to mitigate at $80,000.  Hall opined the driveway would collapse without stabilization, which would cause further damage to the back building.  He explained the collapse was already beginning with continual loss of material, and there was likely to be a significant failure.

Respondents introduced deposition excerpts from Thomas' deposition.  Thomas testified that Respondents' carport awnings projected over his property.  He admitted Click told him the concrete pad would cross the property line.  Thomas also admitted it was apparent that 3668 had an easement and he had reprimanded his employees who drove on Respondents' property.  As to the excavation, Thomas claimed he talked to excavation professionals, but could not remember who, and he was unable to get anyone to do the job.  He therefore hired employees of a friend who owned a pipe boring business to do the excavation.  He claimed he was qualified to do the excavation because he owned the property.  He testified he did not remember if he checked for any underground lines prior to the excavation, which took eighteen days.  He also testified he had not yet put in a retaining wall, but knew there would be erosion.  After the presentation of Respondents' case, the circuit court denied Appellants' motions for directed verdict on all claims except as to quiet title.

During trial, Thomas testified he initially had a good relationship with Click, which deteriorated when Respondents purchased the property and would not allow All-Tech employees to use their side of the driveway.  He testified he researched the plats and had property pins replaced after he bought the property.  He also claimed he offered to sell the section of property Respondents were using to Click.  Thomas claimed he excavated because he wanted to clear the hill behind his property to level it with his building to build a parking lot.  He further testified the back building on 3668 was old and the floor had cracks, but he did not think much about them.  Thomas admitted he had no training in excavation and he denied digging across the property line.  He disputed a drawing by Hall, which indicated Thomas dug beyond the property line, claiming he followed the natural line of the driveway.  Thomas agreed it would cost $82,000 to build a retaining wall.

Paul Mills, qualified as an expert civil engineer, testified the slope between the properties was generally made of clay and from a visual inspection appeared very stable. However, he admitted he could break up the material with his fingers and it consisted of hard clay and "potentially some limestone." He opined the excavation, due to its distance from Respondents' buildings, was unlikely to have caused any damage to the buildings. He further opined a retaining wall was not necessary. Mills admitted the testing performed by Click's expert "possibly" showed a factor of imminent unsafety, but he opined any failure would affect only the driveway. He further testified if there had been settling, the carport slab would have settled and it did not appear to have done so.

The circuit court denied Appellants' renewed motions for directed verdict. The court also granted Respondents' motion for directed verdict on Appellants' allegation of intervening negligence and allowed the punitive damages to go to the jury. The jury found for Respondents on the causes of action as follows: nuisance cause of action—damages of $28,000;[1] negligence cause of action—damages of $168,000; acquiescence; and prescriptive easement. Appellants moved for judgment notwithstanding the verdict (JNOV), new trial, and modification of damages, which the circuit court denied. The court also enjoined Appellants from damaging Respondents' property or taking any action to restrict Respondents' use of the disputed property. This appeal followed.

**STANDARD OF REVIEW**

"The standard of review for an appeal of an action at law tried by a jury is restricted to corrections of errors of law. A factual finding of the jury will not be disturbed unless there is no evidence which reasonably supports the findings of the jury." *Pope v. Heritage Cmtys., Inc.*, 395 S.C. 404, 412, 717 S.E.2d 765, 769 (Ct. App. 2011) (quoting *Felder v. K-Mart Corp.*, 297 S.C. 446, 448, 377 S.E.2d 332, 333 (1989)).

**LAW/ANALYSIS**

**1.    Denial of Motion to Amend**

---

[1] The jury originally awarded $0 damages on the nuisance cause of action; the court instructed the jury to redeliberate; and the jury awarded $28,000 while reducing the award for the negligence cause of action by $28,000.

Appellants argue the circuit court erred in denying their motion to amend their answer to include a counterclaim for declaratory judgment. We disagree.

By orders filed April 7, 2022 and April 29, 2022, the circuit court, *inter alia*, denied Appellants' motion to amend. The court found the case had been pending for two years and "a counterclaim at this late stage of litigation would be prejudicial to [Respondents]." The court next found Respondents already requested the same remedy in their claim to quiet title. The court also denied Appellants' motion to reconsider.

Rule 15(a) of the South Carolina Rules of Civil Procedure provides the following for motions to amend pleadings filed more than thirty days after a responsive pleading is served: "[A] party may amend his pleading only by leave of court or by written consent of the adverse party; . . . leave shall be freely given when justice so requires and does not prejudice any other party." "The prejudice Rule 15 envisions is a lack of notice that the new issue is going to be tried, and a lack of opportunity to refute it." *Pool v. Pool*, 329 S.C. 324, 328-29, 494 S.E.2d 820, 823 (1998). "A motion to amend is addressed to the sound discretion of the trial judge, and the party opposing the motion has the burden of establishing prejudice." *Lee v. Bunch*, 373 S.C. 654, 660, 647 S.E.2d 197, 200 (2007). "[T]he decision to allow an amendment is within the sound discretion of the trial court and will rarely be disturbed on appeal." *Berry v. McLeod*, 328 S.C. 435, 450, 492 S.E.2d 794, 802 (Ct. App. 1997).

Appellants argue the circuit court erred in denying their motion to file an amended answer to include a counterclaim for a declaratory judgment to determine the property line between the subject properties. They also argue there was no prejudice to Respondents because they moved to amend three months prior to trial. They further argue the circuit court's finding, that this issue was already pending in the complaint as Respondents' cause of action to quiet title, became error because Respondents abandoned the quiet title cause of action at trial. Finally, Appellants argue the circuit court erred in failing to issue a final ruling on the matter until a month following the trial. We find no reversible error. As noted by Respondents, "such amendment will not prejudice [Respondents] as the issues set forth in the . . . [c]ounterclaim are already set to be adjudicated as part of [Appellants'] claims." Although the counterclaim, a request for a declaratory judgment to quiet title as to the common property line of the parties, was abandoned, the issues of the parties' use of the property was presented to the jury in the claims for acquiescence and prescriptive easement. In addition, the circuit court did not change the boundary line to favor Respondents. Thus, any error was harmless. *See Judy v. Judy*, 384

S.C. 634, 646, 682 S.E.2d 836, 842 (Ct. App. 2009) ("Error is harmless where it could not reasonably have affected the result of the trial. Generally, appellate courts will not set aside judgments due to insubstantial errors not affecting the result." (internal citation omitted)).

## 2.    Denial of Motion to Dismiss

Appellants argue the circuit court erred in denying their motion to dismiss. We disagree.

Appellants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the South Carolina Rules of Civil Procedure. By order filed May 8, 2020, the circuit court, *inter alia*, denied the motion, finding the various causes of action had been properly pled and the court must presume all well pled facts to be true. Appellants argue the court erred by failing to make specific findings of fact to support the order. A party may move to dismiss for "failure [of the pleading] to state facts sufficient to constitute a cause of action . . . ." Rule 12(b)(6), SCRCP. "In reviewing a motion to dismiss, this Court applies the same standard of review as the trial court." *Carolina Park Assocs., LLC v. Marino*, 400 S.C. 1, 6, 732 S.E.2d 876, 878 (2012). A ruling dismissing a complaint for failure to state facts sufficient to constitute a cause of action must be based solely on allegations set forth in the complaint. *Doe v. Marion*, 373 S.C. 390, 395, 645 S.E.2d 245, 247 (2007). Dismissal is improper "[i]f the facts alleged and inferences reasonably deducible therefrom, viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory." *Id.* After a review of the complaint, we find Respondents alleged facts sufficient to support each of their causes of action.[2] Thus, we affirm the circuit court's denial of Appellants' motion to dismiss.

## 3.    Denial of Motion for Summary Judgment

Appellants argue the circuit court erred in denying their motion for summary judgment. We do not consider this issue because it is not appealable.

In South Carolina, "it is well-settled that an order denying summary judgment is never reviewable on appeal . . . ." *Bank of N.Y. v. Sumter County*, 387 S.C. 147, 154, 691 S.E.2d 473, 477 (2010); *see Ballenger v. Bowen*, 313 S.C. 476, 476, 443 S.E.2d 379, 380 (1994) ("This Court has repeatedly held that the denial of summary judgment is not directly appealable."). Accordingly, we do not consider

---

[2] We address the elements of each cause of action in the directed verdict issue.

this issue. *See Watson v. Underwood*, 407 S.C. 443, 457, 756 S.E.2d 155, 163 (Ct. App. 2014) ("Because the denial of a motion for summary judgment cannot be appealed, we cannot consider this issue.").

**4.      Denial of Motion for Directed Verdict**

Appellants argue the circuit court erred in denying their motions for directed verdicts on all causes of action. We disagree.

"When reviewing the denial of a motion for directed verdict[,] . . . the appellate court applies the same standard as the trial court." *Pope*, 395 S.C. at 434, 717 S.E.2d at 781. "[A] court analyzing directed verdict, JNOV, and new trial motions is concerned solely with the existence of evidence and not with its weight." *Pike v. S.C. Dep't of Transp.*, 332 S.C. 605, 610, 506 S.E.2d 516, 518 (Ct. App. 1998), *aff'd as modified on other grounds*, 343 S.C. 224, 540 S.E.2d 87 (2000). "In ruling on directed verdict or JNOV motions, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions." *Sabb v. S.C. State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). "The appellate court will reverse the trial court's ruling on a directed verdict motion only when there is no evidence to support the ruling or when the ruling is controlled by an error of law." *Estate of Carr ex rel. Bolton v. Circle S. Enters., Inc.*, 379 S.C. 31, 39, 664 S.E.2d 83, 86 (Ct. App. 2008). "When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Erickson v. Jones St. Publishers, LLC*, 368 S.C. 444, 463, 629 S.E.2d 653, 663 (2006).

Nuisance per se

Appellants first argue the circuit court erred in denying their motion for a directed verdict on the nuisance per se cause of action. We disagree.

A nuisance is "anything which works hurt, inconvenience, or damage; anything which essentially interferes with the enjoyment of life or property." *Neal v. Darby*, 282 S.C. 277, 285, 318 S.E.2d 18, 23 (Ct. App. 1984). The interference or inconvenience must be unreasonable to be actionable. *Ravan v. Greenville County*, 315 S.C. 447, 463, 434 S.E.2d 296, 306 (Ct. App. 1993). "The traditional test for determining the existence of a nuisance per se is whether the nuisance has become dangerous at all times and under all circumstances to life, health, or property." *Lucas v. Rawl Fam. Ltd. P'ship*, 359 S.C. 505, 512, 598 S.E.2d 712, 715 (2004).

The question of whether or not a nuisance has become dangerous at all times and under all circumstances is normally for the jury. *See Deason v. S. Ry. Co.*, 142 S.C. 328, 337, 140 S.E. 575, 578 (1927) (finding issue of whether creating an embankment and filling up a ditch caused a nuisance was a jury question); *Suddeth v. Knight*, 280 S.C. 540, 545, 314 S.E.2d 11, 14 (Ct. App. 1984) (finding the question of whether the defendants' actions created a nuisance where they blocked a water course causing ponding of water on the plaintiff's property was for the jury).

In the present case, there was evidence that Appellants' excavation created a condition of "imminent" failure requiring lateral support, damage to the back building, including cracks, air pockets, and elevation changes, and significant damage to the driveway. We find a jury question existed as to whether Appellants' actions constituted a nuisance per se and were dangerous to Respondents' property at all times. Thus, we affirm the circuit court's denial of the motion for a directed verdict on the nuisance per se cause of action.[3]

Negligence

Appellants argue the circuit court erred in denying their motion for a directed verdict on the negligence cause of action because Respondents presented no evidence of damages. We disagree.

A plaintiff must prove three elements to recover on a claim for negligence: "(1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach." *Carolina Chloride, Inc. v. Richland County*, 394 S.C. 154, 163, 714 S.E.2d 869, 873 (2011) (quoting *Tanner v. Florence Cnty. Treasurer*, 336 S.C. 552, 561, 521 S.E.2d 153, 158 (1999)). "If any of these elements is absent[,] a negligence claim

---

[3] We find any error by the circuit court in requiring the jury to reconsider its zero damages award for nuisance per se was harmless because the jury merely reduced its award for damages for the negligence cause of action by the same amount it subsequently awarded for nuisance per se. *See State v. Reyes*, 432 S.C. 394, 406, 853 S.E.2d 334, 340 (2020) ("Put simply, the harmless error rule embodies a commonsense principle our appellate courts have long recognized—'whatever doesn't make any difference, doesn't matter.'" (quoting *State v. Jolly*, 304 S.C. 34, 39, 402 S.E.2d 895, 898 (Ct. App. 1991))).

is not stated." *Summers v. Harrison Constr.*, 298 S.C. 451, 455, 381 S.E.2d 493, 495 (Ct. App. 1989). An action for injury to buildings by an adjoining landowner caused by removal of lateral support through excavation is an action in negligence. *See Momeier v. Koebig*, 220 S.C. 124, 129, 66 S.E.2d 465, 467 (1951) (finding liability for injuries to buildings or improvements by pile driving on adjoining property rests in negligence).

The circuit court found Respondents presented sufficient evidence of damages for the issue to go to the jury. Click testified about damages in and around the back building, to underground utilities, additional maintenance expenses he incurred, and the restrictions caused by the excavation to access his back building by large vehicles. He also presented expert testimony regarding the damages. We affirm the circuit court's denial of the motion for a directed verdict on the negligence cause of action because we find evidence supports the ruling and there was no error of law. *See Estate of Carr*, 379 S.C. at 39, 664 S.E.2d at 86 ("The appellate court will reverse the trial court's ruling on a directed verdict motion only when there is no evidence to support the ruling or when the ruling is controlled by an error of law.").

Acquiescence

Appellants argue the circuit court erred in denying their motion for a directed verdict on the acquiescence cause of action. We disagree.

This court discussed acquiescence in *Coker v. Cummings*, stating the following:

> "A disputed boundary line can be established by acquiescence of the parties." *Kirkland v. Gross*, 286 S.C. 193, 197, 332 S.E.2d 546, 548-49 (Ct. App. 1985), *receded from on other grounds by Boyd v. Hyatt*, 294 S.C. 360, 364 S.E.2d 478 (Ct. App. 1988). "[A]cquiescence is a question of fact determined by the intent of the parties." *Id.* at 198, 332 S.E.2d at 549. "[I]f a party stands by, and sees another dealing with property in a manner inconsistent with his rights, and makes no objection, he cannot afterwards have relief. His silence permits or encourages others to part with their money or property, and he cannot complain that his interest[s] are affected. His silence is acquiescence and it estops him." *McClintic v. Davis*, 228 S.C. 378, 383, 90 S.E.2d 364,

366 (1955) (quoting *S. Ry. Co. v. Day*, 140 S.C. 388, 38 S.E. 870, 1926)).

381 S.C. 45, 53-54, 671 S.E.2d 383, 387-88 (Ct. App. 2008) (alterations in original). "If adjoining landowners occupy their respective premises up to a certain line, which they mutually recognize and acquiesce in for a long period of time, they are precluded from claiming the boundary line thus recognized and acquiesced in is not the true one." *Gardner v. Mozingo*, 293 S.C. 23, 26, 358 S.E.2d 390, 392 (1987). "[S]uch recognition of, and acquiescence in, a line as the true boundary line, if continued for a sufficient length of time, will afford a conclusive presumption that the line thus acquiesced in is the true boundary line." *Knox v. Bogan*, 322 S.C. 64, 72, 472 S.E.2d 43, 48 (Ct. App. 1996). "The length of time required is usually that prescribed by the statute of limitations." *Coker*, 381 S.C. at 54, 671 S.E.2d at 388. "[A]cquiescence can be established even if the period of time is very short . . . ." *Id.* Acquiescence is generally a question of fact. *Jordan v. Judy*, 413 S.C. 341, 348, 776 S.E.2d 96, 100 (Ct. App. 2015).

Respondents presented evidence supporting their claim for acquiescence. Dobson, then a woodworker and neighbor at 3664 Calhoun Memorial Highway, testified the driveway and turnaround existed at 3668 in 1990. He purchased 3668 from Mrs. Ramey in 1996 and was aware of the 1996 Ramey survey, but was not concerned because the turnaround had "always" been used by 3668. He testified the prior owners of 3670 had never used the turnaround, including Wallace Merck, Gregory Porter, and Watkins.[4] In addition, he claimed he never sought permission to use it. Dobson sold 3668 to Smith in 2005. Smith likewise testified he was aware the turnaround was on the adjacent property, but he always exclusively used and maintained it without permission.

Gregory Porter testified he owned 3670 in the late 1990s and early 2000s and always let "everybody" use the driveway. Jimmy Watkins owned 3670 between

---

[4] The 3670 deeds reflect the following: December 31, 1985 sale from Cobb Sales Company, Inc. to Wallace G. Merck; August 28, 2003 sale from Merck to Gregory A. Porter; June 15, 2004 sale from Porter to Jimmy Watkins; May 23, 2018 deed from Watkins to Thomas. The 3668 chain of title is as follows: October 8, 1974 deed from John Cobb to M.R. Ramey; August 28, 1996 Ramey survey; March 21, 1998 deed from Major Ramey to Betty Ramey; April 16, 1998 deed from Betty Ramey to Bradley Dobson; June 9, 2005 deed from Dobson to Mark Smith; February 10, 2017 deed from Smith to Click; March 2, 2017 deed from Click to Click Properties.

2004 and 2019 and testified he never had a need to use the turnaround although both properties had used it in the past under a "neighborly" understanding until Click erected a gate, blocking its access. He testified he never objected to the people at 3668 using the turnaround.

Click admitted he had nothing in writing entitling him to use the turnaround. He testified 3670 never used the turnaround or asked to use it until Thomas took his gate down and parked three dilapidated vehicles there. He also testified he did not receive an offer to buy the property until after the excavation, and the offer required him to give Thomas part of his lower parking lot, and if it had specified purchasing the turnaround area prior to the excavation, he would have welcomed it. Thomas admitted he did nothing to stop Click from pouring concrete on his part of the property in the turnaround. We find no error by the circuit court in denying the motion for a directed verdict on the acquiescence cause of action.

Prescriptive Easement

Appellants argue the circuit court erred in denying their motion for directed verdict as to prescriptive easement. We find no reversible error.

In *Simmons v. Berkeley Electric Cooperative, Inc.*, our supreme court simplified the test for a prescriptive easement, stating "[i]n order to establish a prescriptive easement, the claimant must identify the thing enjoyed, and show his use has been open, notorious, continuous, uninterrupted, and contrary to the true property owner's rights for a period of twenty years." 419 S.C. 223, 233, 797 S.E.2d 387, 392 (2016). "[E]stablishing a prescriptive easement does not confer ownership of property; it only confers the right to use that property." *Carolina Ctr. Bldg. Corp. v. Enmark Stations, Inc.*, 433 S.C. 144, 162, 857 S.E.2d 16, 26 (Ct. App. 2021).

We find no dispute as to the "thing enjoyed," which was the driveway and turnaround. Also, Respondents presented evidence of open, notorious, continuous, interrupted use for a period of twenty years, contrary to the property rights of 3670. "'Open' generally means that the use is not made in secret or stealthily. It may also mean that it is visible or apparent." *Simmons*, 419 S.C. at 233, 797 S.E.2d at 392 (quoting Restatement (Third) of Property (Servitudes) § 2.17(h) (2000)). "'Notorious' generally means that the use is actually known to the owner, or is widely known in the neighborhood." *Id.* (quoting Restatement (Third) of Property (Servitudes) § 2.17(h) (2000)). "[I]n order to satisfy the continual use requirement, the use must only be of a reasonable frequency as determined from the nature and needs of the claimant." *Jones v. Daley*, 363 S.C. 310, 318, 609 S.E.2d 597, 601

(Ct. App. 2005), *overruled on other grounds by Simmons*, 419 S.C. at 232, 797 S.E.2d at 392. "[A]ctions are sufficient to interrupt the prescriptive period when the servient landowner engages in overt acts, such as erecting physical barriers, which cause a discontinuance of the dominant landowner's use of the land, no matter how brief." *Pittman v. Lowther*, 363 S.C. 47, 52, 610 S.E.2d 479, 481 (2005). "To satisfy the twenty-year prescriptive period, the claimant can tack his use to use by prior owners, provided the prior owners' use also satisfies the prescriptive easement elements." *Carolina Ctr. Bldg. Corp.*, 433 S.C. at 155, 857 S.E.2d at 22. "If tacking is used, the use by the previous owners must have also been adverse or under a claim of right." *Braswell v. Amick*, 442 S.C. 618, 628-29, 900 S.E.2d 475, 481 (Ct. App. 2024).

We find Respondents presented evidence the use was open, notorious, continuous, and uninterrupted for at least twenty years. Dobson and Smith both testified that 3668 openly and notoriously used the driveway and turnaround for many years from at least 1990. Smith testified he always used and maintained the property without permission. Numerous other predecessors in interest of both properties testified 3668 used the disputed property. Finally, Click maintained he sought permission from his landlord, rather than the owner of 3670, to encroach on the property when building a carport. Thomas admitted he was aware of the use, including Respondents' pouring concrete on a portion of the disputed property. This evidence supports the elements of open, notorious, and continuous for twenty years. As to uninterrupted, Appellants did not provide any evidence of interruption of the use until the dispute in this case arose. Finally, we find the use of the disputed property by tenants and owners of 3668 was contrary to the rights of 3670, and although Appellants introduced some evidence the use was permissive, the circuit court correctly found the question was properly one for the jury. *See id.* at 631-32, 900 S.E.2d at 482 (citing *Simmons*, 419 S.C. at 231, 797 S.E.2d at 391, and discussing the term "contrary to the rights" in a manner similar to "adverse"); *Carolina Ctr. Bldg. Corp.*, 433 S.C. at 160, 857 S.E.2d at 25 (finding when a claimant shows the elements of open, notorious, continuous, uninterrupted, and in derogation of another's rights for twenty years, the claimant is entitled to the presumption the use was adverse); *id.* at 161, 857 S.E.2d at 25 (finding once the presumption applies, the servient owner bears the burden of rebutting the presumption). We affirm the circuit court's denial of the motion for a directed verdict on the prescriptive easement cause of action because we find evidence supports the ruling and there was no error of law. *See Estate of Carr*, 379 S.C. at 39, 664 S.E.2d at 86 ("The appellate court will reverse the trial court's ruling on a

directed verdict motion only when there is no evidence to support the ruling or when the ruling is controlled by an error of law.").[5]

## 5.     Denial of Post-Trial Motions

Appellants argue the circuit court erred in denying their post-trial motions and motion to reconsider.  We disagree.

Appellants filed post-trial motions for the following relief: (1) JNOV; (2) new trial; and (3) modification of damages.  The circuit court denied Appellant's motions and granted Respondents' post-trial motion for injunctive relief,[6] including prohibiting Appellants from constructing a fence or obstruction of any kind or taking any action that would restrict Respondents' use of the gravel drive or turnaround; prohibiting Appellants from taking any action to damage Respondents' property; and ordering both Appellants and Respondents to refrain from harassing the other party, their employees, and/or their customers.  We find no error.

Rule 50(b), of the South Carolina Rules of Civil Procedure provides:

> A party who has moved for a directed verdict may move
> to have the verdict and any judgment entered thereon set
> aside and to have judgment entered in accordance with
> his motion for a directed verdict; or if a verdict was not
> returned, such party may move for judgment in
> accordance with his motion for a directed verdict.  A
> motion for a new trial may be joined with this motion, or

---

[5] To the extent Appellants argue the circuit court erred in finding the verdicts of acquiescence and prescriptive easement are not inconsistent, we affirm.  As noted by the circuit court, Respondents "did not assert that [Respondents] must elect one over the other, only that the jurors were 'confused' and therefore a new trial should be granted."  "In South Carolina, an appellate court must uphold a jury verdict if it is possible to reconcile its various features." *Camden v. Hilton*, 360 S.C. 164, 174, 600 S.E.2d 88, 93 (Ct. App. 2004).  "A jury verdict should be upheld when it is possible to do so and carry into effect the jury's clear intention." *Johnson v. Parker*, 279 S.C. 132, 135, 303 S.E.2d 95, 97 (1983).  We agree with the circuit court that the jury found Respondents were entitled to use of the disputed property, and "whether prescriptive easement and acquiescence are inconsistent or not, the practical effect is the same."

[6] Respondents moved, *inter alia*, to make the temporary injunction permanent.

a new trial may be prayed for in the alternative.

"When we review a trial judge's grant or denial of a motion for directed verdict or JNOV, we reverse only when there is no evidence to support the ruling or when the ruling is governed by an error of law." *Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 42, 691 S.E.2d 135, 145 (2010).  "When considering a motion for JNOV, the trial court is concerned with the existence of evidence, not its weight." *Chakrabarti v. City of Orangeburg*, 403 S.C. 308, 313, 743 S.E.2d 109, 112 (Ct. App. 2013).  "[T]he jury's verdict must be upheld unless no evidence reasonably supports the jury's findings." *Id.*  The trial court's ruling on a motion for new trial absolute is reviewed by the appellate court for abuse of discretion.  *See Mills v. S.C. State Ports Auth.*, 435 S.C. 213, 230, 865 S.E.2d 910, 918 (Ct. App. 2021) (finding the trial court did not abuse its discretion in denying the Ports Authority's motion for a new trial absolute).  A new trial absolute should only be granted when the verdict "is shockingly disproportionate to the injuries suffered and thus indicates that passion, caprice, prejudice, or other considerations not reflected by the evidence affected the amount awarded." *Becker v. Wal-Mart Stores, Inc.*, 339 S.C. 629, 635, 529 S.E.2d 758, 761 (Ct. App. 2000).  "The denial of a motion for a new trial nisi is within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion." *James v. Horace Mann Ins. Co.*, 371 S.C. 187, 193, 638 S.E.2d 667, 670 (2006).  "Even as to a new trial nisi remittitur, the trial judge's discretion is broad." *Burke v. AnMed Health*, 393 S.C. 48, 56-57, 710 S.E.2d 84, 89 (Ct. App. 2011).  A jury's award of damages is entitled to substantial deference. *Todd v. Joyner,* 385 S.C. 509, 517, 685 S.E.2d 613, 618 (Ct. App. 2008), *aff'd*, 385 S.C. 421, 685 S.E.2d 595 (2009).

We find there was evidence to support the jury's verdicts on each cause of action as previously discussed. We also find evidence to support the jury's award of damages.  Click estimated Respondents lost work valued at approximately $20,000.  Click testified about other damage, including four waterline breaks since the excavation due to the loss of lateral support, and damage to the septic system.  According to Click, the back building was sliding and collapsing toward the excavation.  Click estimated damage to the property of $83,000 and testified he spent numerous hours attempting to mediate the damage, including grading and maintaining the gravel.  Click's expert, Hall, estimated the cost to mitigate damages at $80,000.  "When considering whether the verdict is excessive, a court will not disturb the jury's verdict if substantial evidence exists to sustain the verdict." *Kunst v. Loree*, 424 S.C. 24, 46, 817 S.E.2d 295, 306 (Ct. App. 2018).  "[A] jury's determination of damages is given substantial deference." *Id.*  "A verdict which may be supported by any rational view of the evidence and bears a reasonable

relationship to the character and extent of the injury and damage sustained, is not excessive." *Id.* at 46-47, 817 S.E.2d at 306 (quoting *Young v. Warr*, 252 S.C. 179, 187, 165 S.E.2d 797, 801 (1969)). We find substantial evidence exists to support the verdicts; thus, the circuit court did not err in denying Appellants' post-trial motions.

**CONCLUSION**

For the foregoing reasons, the jury's verdict and injunction are

**AFFIRMED.**

**HEWITT and VINSON, JJ., concur.**